[No. H033329. Sixth Dist. Jan. 27, 2010.]

VIRGINIA ROBLES et al., Plaintiffs and Respondents, v.
PURUSH CHALILPOYIL, Defendant and Appellant.

568

COUNSEL

Neil L. Shapiro for Defendant and Appellant.

Carcione, Cattermole, Dolinski, Okimoto, Stucky, Ukshini, Markowitz & Carcione, Joseph W. Carcione, Jr., Neal A. Markowitz and Chad E. DeVeaux for Plaintiffs and Respondents.

OPINION

ELIA, J.—Virginia Robles and members of her family filed an action against their former attorneys and appellant Purush Chalilpoyil, alleging negligence and conspiracy to commit fraud. Appellant moved to strike the complaint under the anti-SLAPP (strategic lawsuit against public participation) law, Code of Civil Procedure section 425.16 (hereafter, section 425.16), but the superior court denied the motion. Appellant seeks review, contending that the conduct on which the complaint is based consists of communications protected by section 425.16. We disagree and affirm the order.

*Background*

Respondents are family members of John Robles, who burned to death when his wheelchair ignited while he was occupying it. In December 2004 respondents initiated an action for wrongful death against Golden State Medical Supply, Pride Mobility Products Corp., and others (the *Robles v. GSMS* case). Thomas Wills and C. Denise Benoit (collectively, the Wills attorneys or the Wills firm), represented respondents in that lawsuit. Thomas Wills retained appellant to provide expert consulting services and testimony.

According to the complaint in the present case, trial in *Robles v. GSMS* was scheduled for October 31, 2006. On November 1, Thomas Wills advised the court that a continuance would be necessary because of a conflict with appellant. Wills represented that appellant had testified falsely in his deposition, claiming to have been present at a product-testing session material to his testimony. The trial court continued the trial to January 8, 2007, to allow Wills to procure another expert witness.

Before the new trial date, Wills allegedly requested each plaintiff to sign a waiver of any interest in a device Wills wanted to market to address the safety defects in the decedent's wheelchair. Wills indicated that the device would be designed and manufactured together with appellant, based on research and information appellant had gathered in preparing his expert testimony. According to the complaint, instead of retaining a new expert,

Wills decided to settle the *Robles v. GSMS* case, and he obtained the consent of some of the plaintiffs. Other plaintiffs, including respondents in this case, were reluctant; but Wills "coerced, forced, and/or wrongly pressured the plaintiffs herein to tell the court that they 'agreed' to settle that entire case" for $1 million. Respondents thereafter refused to accept any of the settlement proceeds.

On January 25, 2007, the Wills firm withdrew from the *Robles v. GSMS* case and filed a notice of lien for attorney fees. When the settling defendants moved to enforce the settlement, plaintiffs were unable to find counsel to represent them in opposing the motion, and it was granted.

Respondents filed the instant action on January 8, 2008, against the Wills attorneys and appellant. The claims against appellant were for negligence (first cause of action) and conspiracy to commit fraud (fourth cause of action). Respondents specifically alleged that appellant had failed to exercise reasonable care by (1) falsely testifying in deposition that he had been present at the testing session and (2) "failing to continue to act as an independent expert and/or disrupting the prosecution of the [*Robles v. GSMS*] case by entering into a business relationship, agreement, and/or proposal with [the Wills attorneys] to design, develop and/or market a device or devices to improve the safety of the wheelchair in which John Robles, Sr. was killed, while said defendants were still obligated to act as the plaintiffs' expert in the [*Robles v. GSMS*] case." In the fourth cause of action respondents alleged that appellant and the Wills attorneys had conspired to "defraud, conceal facts, and engage in acts and omissions intended to deny the plaintiffs a full and fair prosecution of the [*Robles v. GSMS*] case." In addition, each of them "willfully, fraudulently, and deliberately suppressed, concealed, and failed to provide plaintiffs the true facts concerning the defendants' actual or proposed business relationship" involving the improvements to the wheelchair. The defendants' failure to disclose that information was intended to induce respondents to settle the underlying case for a sum that was not agreeable to them and thus to forgo a trial. Had respondents been aware of the concealed facts, they would not have agreed to settle the underlying case and would have found new counsel to prosecute the action.

Appellant moved to strike the first and fourth causes of action as a SLAPP (strategic lawsuit against public participation) under section 425.16. Appellant contended that the first cause of action was based on false testimony that was made in the context of a legal proceeding and was therefore protected communication. The fourth cause of action, he argued, was based on a request from Thomas Wills to appellant soliciting appellant's agreement to allow his work product to be provided to the underlying defendants in the event of a settlement. In appellant's view, those discussions about a prospective business relationship fell "comfortably" within the express terms of

section 425.16, subdivision (e)(2) as well as within the litigation privilege described in Civil Code section 47, subdivision (b).

After considering the parties' briefs and hearing oral argument on the matter, the superior court articulately explained its view of the law as applied to the pleading at issue. The court ruled that respondents' complaint did not fall within the protection of either the litigation privilege or the anti-SLAPP statute. Accordingly, the court denied appellant's motion to strike the complaint. This appeal followed.

## Discussion

### 1. The Anti-SLAPP Statute

█ Both parties appear to understand the nature of SLAPP actions and the regulating statute, section 425.16. A SLAPP is "a meritless suit filed primarily to chill the defendant's exercise of First Amendment rights." (*Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 815, fn. 2 [33 Cal.Rptr.2d 446]; see *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1126 [81 Cal.Rptr.2d 471, 969 P.2d 564]; *Robertson v. Rodriguez* (1995) 36 Cal.App.4th 347, 354–355 [42 Cal.Rptr.2d 464].) Section 425.16 was enacted in 1992 to address the "disturbing increase" in the frequency of these meritless harassing lawsuits. (§ 425.16, subd. (a); see *Navellier v. Sletten* (2002) 29 Cal.4th 82, 85, fn. 1 [124 Cal.Rptr.2d 530, 52 P.3d 703].) It was the Legislature's finding "that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process. To this end, this section shall be construed broadly." (§ 425.16, subd. (a).) The statute was thus designed to deter meritless actions that "deplete 'the defendant's energy' and drain 'his or her resources' [citation], . . . ' ". . . by ending them early and without great cost to the SLAPP target" ' [citation]." (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 192 [25 Cal.Rptr.3d 298, 106 P.3d 958]; see *Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 278 [46 Cal.Rptr.3d 638, 139 P.3d 30]; *Chabak v. Monroy* (2007) 154 Cal.App.4th 1502 [65 Cal.Rptr.3d 641].) A defendant who has been "victimized" by such meritless, retaliatory suits is entitled to relief in the form of attorney fees and costs. (*Liu v. Moore* (1999) 69 Cal.App.4th 745 [81 Cal.Rptr.2d 807]; *Kyle v. Carmon* (1999) 71 Cal.App.4th 901, 907 [84 Cal.Rptr.2d 303].)

### 2. Scope of Review

█ Section 425.16 expressly provides that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right

of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) In evaluating a motion under the statute the trial court engages in "a two-step process. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 [124 Cal.Rptr.2d 507, 52 P.3d 685] (*Equilon*); see *Navellier v. Sletten, supra*, 29 Cal.4th 82, 88; *Varian Medical Systems, Inc. v. Delfino, supra*, 35 Cal.4th 180, 192.) "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten, supra*, 29 Cal.4th at p. 89.)

If the trial court's decision is correct on any theory applicable to the case, we affirm the order regardless of the correctness of the grounds on which the lower court reached its conclusion. (*Bernardo v. Planned Parenthood Federation of America* (2004) 115 Cal.App.4th 322, 357 [9 Cal.Rptr.3d 197].) On appeal, however, we review the entire record de novo to decide whether the defendant has shown that section 425.16 applies and, if so, whether the plaintiff has shown a probability of prevailing. (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 999 [113 Cal.Rptr.2d 625]; *Monterey Plaza Hotel v. Hotel Employees & Restaurant Employees* (1999) 69 Cal.App.4th 1057, 1063 [82 Cal.Rptr.2d 10].) Accordingly, we independently determine whether the challenged cause of action arose from the defendant's exercise of the constitutional right of petition or free speech—and if so, whether the plaintiff has demonstrated a probability of prevailing on the merits of the claim. (*Sylmar Air Conditioning v. Pueblo Contracting Services, Inc.* (2004) 122 Cal.App.4th 1049, 1056 [18 Cal.Rptr.3d 882]; *ComputerXpress, Inc. v. Jackson, supra*, 93 Cal.App.4th at p. 999.) We consider "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2).) "However, we neither 'weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff

[citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law.' " (*Soukup v. Law Offices of Herbert Hafif, supra,* 39 Cal.4th at p. 269, fn. 3, quoting *HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 212 [12 Cal.Rptr.3d 786]; see *Chabak v. Monroy, supra,* 154 Cal.App.4th 1502.)

### 3. The "Arising from" Requirement

■ The first step of the court's analysis is to determine whether the cause of action *arose from* protected speech or petitioning activity. "California courts rightly have rejected the notion 'that a lawsuit is adequately shown to be one "arising from" an act in furtherance of the rights of petition or free speech as long as suit was brought after the defendant engaged in such an act, whether or not the purported basis for the suit is that act itself.' " (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 77 [124 Cal.Rptr.2d 519, 52 P.3d 695], quoting *ComputerXpress, Inc. v. Jackson, supra,* 93 Cal.App.4th at p. 1002.) "Moreover, that a cause of action arguably may have been 'triggered' by protected activity does not entail that it is one arising from such." (*Navellier v. Sletten, supra,* 29 Cal.4th at p. 89.) Instead, "the statutory phrase 'cause of action . . . arising from' means simply that the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech. [Citation.] In the anti-SLAPP context, the critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech." (*City of Cotati v. Cashman, supra,* 29 Cal.4th at p. 78; see *Navellier v. Sletten, supra,* 29 Cal.4th at p. 89; *Episcopal Church Cases* (2009) 45 Cal.4th 467, 477 [87 Cal.Rptr.3d 275, 198 P.3d 66].)

■ "As courts applying the anti-SLAPP statute have recognized, the 'arising from' requirement is not always easily met." (*Equilon, supra,* 29 Cal.4th at p. 66.) The requirement can be satisfied only by showing that the defendant's conduct falls within one of the four statutory categories described in section 425.16, subdivision (e). (*Equilon, supra,* 29 Cal.4th at p. 66.) This provision defines " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' " to include "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of

public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).) ■ The Supreme Court has "cautioned that the 'anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning.' " (*Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 187 [6 Cal.Rptr.3d 494], quoting *Navellier v. Sletten, supra*, 29 Cal.4th at p. 92.)

### 4. *Application of Section 425.16*

In this case appellant maintains that both the first and fourth causes of action "fall comfortably" within the reach of section 425.16. The first of respondents' claims, appellant argues, is based on his "false deposition testimony" and thus "unquestionably constitutes an 'oral statement . . . made before a . . . judicial proceeding,' " within the meaning of section 425.16, subdivision (e)(1). The fourth cause of action, according to appellant, is based on settlement discussions that were protected by the litigation privilege described in Civil Code section 47, subdivision (b); consequently, he argues, they must also be within the scope of section 425.16, subdivision (e), though he does not identify the specific provision.

■ If applying the statute were as simple as identifying statements made in the course of litigation, appellant would have a successful argument. But "[t]he statute does not accord anti-SLAPP protection to suits arising from any act having any connection, however remote, with an official proceeding. The statements or writings in question must occur in connection with 'an issue under consideration or review' in the proceeding." (*Paul v. Friedman* (2002) 95 Cal.App.4th 853, 866, 867 [117 Cal.Rptr.2d 82].) In other words, "it is the *principal thrust* or *gravamen* of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies [citation], and when the allegations referring to arguably protected activity are only incidental to a cause of action based essentially on nonprotected activity, collateral allusions to protected activity should not subject the cause of action to the anti-SLAPP statute." (*Martinez v. Metabolife Internat., Inc., supra*, 113 Cal.App.4th at p. 188; see *Wang v. Wal-Mart Real Estate Business Trust* (2007) 153 Cal.App.4th 790, 802 [63 Cal.Rptr.3d 575] [applicability of anti-SLAPP statute determined by "principal thrust or predominant nature of the complaint"].)

Closer examination of the conduct alleged in respondents' complaint compels a different result from the one urged by appellant. In the first cause of action, appellant was accused of negligence by (1) falsely testifying in his deposition regarding his presence at the product-testing session and

(2) "failing to continue to act as an independent expert and/or disrupting the prosecution of the [*Robles v. GSMS*] case by entering into a business relationship, agreement, and/or proposal with [the Wills] defendants . . . to design, develop and/or market a device or devices to improve the safety of the wheelchair in which John Robles, Sr. was killed, while said defendants were still obligated to act as the plaintiffs' expert in the [*Robles v. GSMS*] case." The conduct described in the second allegation does not fall into any of the four categories of section 425.16, subdivision (e), much less subdivision (e)(1), on which appellant relies; it was not a written or oral statement, nor was it "conduct . . . in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e)(4).)

Appellant disregards this second allegation and focuses instead on the first, the false deposition testimony. Although this was a statement made in the course of a judicial proceeding, that description does not go far enough. It is true that the statute protects litigation-related speech and petitioning activity undertaken on another's behalf (*Briggs v. Eden Council for Hope & Opportunity, supra*, 19 Cal.4th at p. 1116; cf. *Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056 [39 Cal.Rptr.3d 516, 128 P.3d 713]), but the statute should not be used to insulate those statements from recourse by the very client on whose behalf the statement was made.

*Jespersen v. Zubiate-Beauchamp* (2003) 114 Cal.App.4th 624 [7 Cal.Rptr.3d 715] illustrates this point. There the plaintiffs sued their former attorneys for malpractice, claiming negligence in the handling of a civil lawsuit brought against them. The defendant attorneys invoked the anti-SLAPP law on the ground that the action arose from protected petitioning activity, including declarations they had filed during their representation of the respondents. The Second District, Division Four, rejected this view of the posture of the case. The essence of the respondents' complaint was not the pleadings, declarations, or other statements the defendants had made during the litigation, but their failure to serve timely discovery responses and to comply with the court's discovery orders. Section 425.16 was not available to the defendants as an avenue of escape in the malpractice lawsuit.

The same court subsequently extended its holding in *Jespersen* to allegations of breach of an attorney's duty of loyalty. In *Benasra v. Mitchell Silberberg & Knupp LLP* (2004) 123 Cal.App.4th 1179 [20 Cal.Rptr.3d 621] (*Benasra*) the defendant attorneys attempted to avoid the effect of *Jespersen* by arguing that the claims against them were based on a written statement filed in a judicial proceeding on behalf of a different client, not the plaintiffs, as in *Jespersen*. Their argument failed. Their statements were made not on

behalf of merely a third party, but on behalf of the *rival* of the plaintiffs. The gravamen of the cause of action against them was not their exercise of the right of petition or speech, but their conflict of interest in representing a rival in arbitration. The appellate court emphasized that the claims against the attorney defendants were based on violations of the State Bar Rules of Professional Conduct, and specifically rule 3-310(C) and (E),[1] which forbid representation or employment that conflicts with the interests of a client or former client. The breach of the attorneys' duty of loyalty did not depend on whether they had actually disclosed any confidential information. "The breach occurs not when the attorney steps into court to represent the new client, but when he or she abandons the old client. Therefore, [defendants'] argument that section 425.16 applies to this tort must fail. In other words, once the attorney accepts a representation in which confidences disclosed by a former client may benefit the new client due to the relationship between the new matter and the old, he or she has breached a duty of loyalty. The breach of fiduciary duty lawsuit may follow litigation pursued against the former client, but does not arise from it." (123 Cal.App.4th at p. 1189.)

In *Kolar v. Donahue, McIntosh & Hammerton* (2006) 145 Cal.App.4th 1532, 1539 [52 Cal.Rptr.3d 712], the Fourth District, Division Three, reached a result consistent with that of *Jespersen*, but rejected the reasoning of the *Jespersen* court. In the *Kolar* court's view, the *Jespersen* holding "implies that an attorney may invoke the protection of the anti-SLAPP statute against a malpractice claim where the alleged malpractice was committed in connection with petitioning activity, such as the filing of a pleading, but not when the attorney fails to act, such as failing to respond to discovery or court orders. Under this logic, the anti-SLAPP statute would apply to a malpractice claim alleging the attorney filed an answer omitting a critical defense, but not where the attorney failed to file an answer at all. In the former case, however, the malpractice claim arises not from the filing of the answer, but from the attorney's failure to provide competent legal representation. That the malpractice claim was triggered by the filing of the defective pleading does not upset the basic principle that attorney malpractice is not a protected right." (*Ibid.*)

The *Kolar* court instead drew a clear boundary around malpractice actions, rejecting entirely the notion that such lawsuits can be defeated by resort to section 425.16: "A malpractice claim focusing on an attorney's incompetent handling of a previous lawsuit does not have the chilling effect on advocacy found in malicious prosecution, libel, and other claims typically covered by the anti-SLAPP statute. In a malpractice suit, the client is not suing because the attorney petitioned on his or her behalf, but because the attorney did not competently represent the client's interests while doing so. Instead of chilling the petitioning activity, the threat of malpractice encourages the attorney to

---

[1] All further references to rules are to the Rules of Professional Conduct.

petition competently and zealously. This is vastly different from a third party suing an attorney for petitioning activity, which clearly could have a chilling effect." (*Kolar v. Donahue, McIntosh & Hammerton, supra*, 145 Cal.App.4th at p. 1540.)

In *Freeman v. Schack* (2007) 154 Cal.App.4th 719 [64 Cal.Rptr.3d 867] the Fourth District, Division One, addressed issues similar to those presented in *Benasra*. There the issue was again the viability of an anti-SLAPP motion in an action for breach of contract, professional negligence, and breach of fiduciary duty. The plaintiffs alleged that Schack, the defendant attorney, had violated rule 310(C) and (E), by representing another party's adverse interests in the same litigation and a subsequent related matter, even to the point of disclosing confidential information and work product with that party. Rejecting the defendant's reliance on section 425.16, the court explained, "the fact [that] plaintiffs' claims are related to or associated with Schack's litigation activities is not enough." (154 Cal.App.4th at p. 729.) The "principal thrust" of the plaintiffs' complaint was not Schack's litigation activity itself; the allegations regarding that conduct were "incidental" to the primary assertions of "breach of contract, negligence in failing to properly represent their interests, and breach of fiduciary duty arising from his representation of clients with adverse interests." (*Id.* at p. 732.) On the contrary, the gravamen of the complaint was Schack's "undertaking to represent a party with interests adverse to plaintiffs, in violation of the duty of loyalty he assertedly owed them." (*Ibid.*)

Recently the *Freeman v. Schack* court reaffirmed its view in upholding the denial of an anti-SLAPP motion brought by an attorney. The plaintiff in *Hylton v. Frank E. Rogozienski, Inc.* (2009) 177 Cal.App.4th 1264 [99 Cal.Rptr.3d 805] had asserted claims against Rogozienski related to an assertedly unconscionable contingency fee. Rogozienski had convinced Hylton that if he did not settle a case against the company he had founded and worked for, he could lose the stock he had accrued. Rogozienski's fee included one-third of all the stock eventually confirmed to Hylton in the lawsuit, which would have yielded $2 million to Rogozienski. (*Id.* at p. 1269.) Citing not only *Freeman* but also *Jespersen, Kolar*, and *Benasra*, the court held that Rogozienski had failed to make his threshold showing that Hylton's suit for rescission of the contingency agreement arose from protected petitioning activity under section 425.16; the gravamen of his claims rested "on the alleged violation of Rogozienski's fiduciary obligations to Hylton by giving Hylton false advice to induce him to pay an excessive fee to Rogozienski." (177 Cal.App.4th at p. 1274.)

These decisions from other appellate districts of our state are consistent with our conclusion that section 425.16 does not shield statements made

on behalf of a client who alleges negligence in the defendant's representation of the client or breach of the duty of loyalty. We see no reason to create an exception for an expert witness retained by the plaintiffs to testify on their behalf.

The same may be said of the fourth cause of action for conspiracy to commit fraud. This claim was based on the joint conduct of appellant and the Wills defendants, who allegedly "conspired and agreed among themselves to defraud, conceal facts, and engage in acts and omissions intended to deny the plaintiffs a full and fair prosecution of the [*Robles v. GSMS*] case." Appellant was said to have "suppressed, concealed, and failed to provide plaintiffs the true facts concerning the defendants' actual or proposed business relationship . . . ." The gravamen of this cause of action is not litigation-related speech or petitioning activity on respondents' behalf; it was conduct outside the litigation—specifically, suppression of information about defendants' business relationship—which deprived respondents of the representation for which they had retained defendants. But to the extent that the cause of action can be said to have arisen from the right of free speech or petition, that right clearly was not being exercised in the litigation on respondents' behalf.

At the hearing on his motion appellant urged the court to follow *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 665 [35 Cal.Rptr.3d 31] for the argument that both the alleged false deposition testimony (first cause of action) and statements made during settlement (fourth cause of action) constituted protected activity within the meaning of section 425.16. On appeal, he continues this line of reasoning in his reply brief. *Peregrine Funding*, however, does not help appellant. There the appellate court applied the anti-SLAPP law to an action for legal malpractice and breach of fiduciary duty against a law firm that was simultaneously representing a "co-client" in an SEC (Securities and Exchange Commission) suit for violating securities laws. (133 Cal.App.4th at p. 667.) On the facts presented, section 425.16 was determined to be applicable because the plaintiffs' claims were "based in significant part" on the defendant firm's "protected petitioning activity" in representing the "co-client," Hillman, in the SEC litigation. (133 Cal.App.4th at pp. 675, 673.) Although the court acknowledged that the viability of an anti-SLAPP motion turns on the principal thrust or gravamen of the cause of action, it accorded more weight to "the fact . . . that some of the alleged *actions* constituting these breaches of duty involved petitioning activity the firm undertook on behalf of its client Hillman." (*Id.* at p. 673.) On these facts the court distinguished

*Jespersen* and questioned the reasoning of *Benasra,* including the *Benasra* court's "focus on the issue of breach of duty."[2] (133 Cal.App.4th at p. 674.)

*United States Fire Ins. Co. v. Sheppard, Mullin, Richter & Hampton LLP* (2009) 171 Cal.App.4th 1617 [90 Cal.Rptr.3d 669] involved the same defendant law firm, but there the First District, Division Four, reached a different conclusion from that of *Peregrine Funding,* this time affirming the denial of the law firm's anti-SLAPP motion. As in *Benasra, supra,* 123 Cal.App.4th 1179, the plaintiff in *United States Fire* alleged a conflict of interest resulting from the defendant law firm's representation of a client with adverse interests in violation of rule 3-310(E). The appellate court rejected the defendants' theory that its representation of the asbestos creditors was protected litigation activity and instead reached a conclusion consistent with *Benasra.* The principal thrust of the complaint was not the disclosure of its confidences, but the conflict of interest engendered by its subsequent representation of a client with adverse interests. "Accordingly, because the allegations on which U.S. Fire's complaint is based do not involve protected activity under section 425.16," the defendant's anti-SLAPP motion was properly denied. (*United States Fire,* at p. 1629.)

■ Whether or not the *Peregrine Funding* court correctly applied section 425.16, the facts before us call for a different outcome. The central subject of the complaint against appellant is not an exercise of free speech or petition but the negligence or fraud inherent in his act of entering into a business relationship to respondents' detriment. Further, to the extent that appellant and the Wills attorneys *were* exercising free speech or petition rights, it was on respondents' behalf, not on behalf of another client, as in *Peregrine Funding.* To turn respondents' own constitutional right against them when they claim negligence and fraud in the exercise of that right would be manifestly unfair and surely beyond the contemplation of the Legislature even in its mandate to construe the statute broadly.

In moving to strike the complaint appellant also invoked the litigation privilege under Civil Code section 47, subdivision (b), which became the subject of debate that has continued on appeal. Appellant contended that his deposition testimony, "even if assertedly false," was privileged, as were discussions about a contemplated business relationship made during settlement negotiations. Respondents disputed the applicability of the litigation

---

[2] We question the *Peregrine Funding* court's reliance on section 425.16, subdivision (e)(4) as protecting the defendant law firm's conduct. The defendant's orchestration of bankruptcy and withholding of documents in discovery did not fall into this category because these acts did not constitute "conduct in furtherance of the exercise of the constitutional right of petition or . . . free speech *in connection with a public issue or an issue of public interest.*" (§ 425.16, subd. (e)(4), italics added.)

privilege, citing *Mattco Forge v. Arthur Young & Co.* (1992) 5 Cal.App.4th 392 [6 Cal.Rptr.2d 781] and *Lambert v. Carneghi* (2008) 158 Cal.App.4th 1120 [70 Cal.Rptr.3d 626]. In each of those cases the appellate court refused to apply the litigation privilege to protect an expert from liability to his former clients. In such cases the policies underlying the privilege[3]—in particular, promoting access to the courts and encouraging witnesses to testify truthfully—are not served if the party's expert is shielded from his own negligent or tortious conduct. "If an expert witness's negligence and breach of contract cause dismissal of the party who hired that expert witness, that does not expand freedom of access to the courts. Applying the privilege in this circumstance does not encourage witnesses to testify truthfully; indeed, by shielding a negligent expert witness from liability, it has the opposite effect. Applying the privilege where the underlying suit never reached the trial stage would also mean that the party hiring the expert witness would have to bear the penalty for the expert witness's negligence. That result would scarcely encourage the future presentation of truthful testimony by that witness to the trier of fact." (*Mattco Forge, supra,* 5 Cal.App.4th at p. 404; accord, *Lambert, supra,* 158 Cal.App.4th at pp. 1139–1144 [and cases cited therein]; see also *Kolar v. Donahue Hammerton, supra,* 145 Cal.App.4th at pp. 1540–1541 [rejecting claim that malpractice action was barred by litigation privilege and therefore also within protection of anti-SLAPP statute]; *Flatley v. Mauro* (2006) 39 Cal.4th 299, 325 [46 Cal.Rptr.3d 606, 139 P.3d 2] [rejecting argument that activity privileged under Civ. Code, § 47, subd. (b) is necessarily protected under anti-SLAPP statute].) In this case the trial court found *Mattco Forge* and *Lambert* to be "pretty persuasive" and thus dispositive of the "arising from" prong of the anti-SLAPP analysis.

Appellant contends that the court erred in relying on *Mattco Forge* and *Lambert. Lambert* was based on inapposite precedent, he argues, and *Mattco Forge* was decided before the enactment of section 425.16 and ensuing Supreme Court authority. Moreover, he argues, the *Mattco Forge* holding was based on a "flawed analysis" and "flat wrong" dicta, as that court failed to distinguish between communicative and noncommunicative acts.

 It is unnecessary to weigh in on the correctness of those decisions or their applicability to this case, because their analytic and procedural similarities and differences do not alter the conclusion we have reached. We disagree with appellant's premise, that all communications protected by the litigation privilege are "therefore within the ambit of [section] 425.16." The statutory

---

[3] "Several policies underlie the privilege. First, it affords litigants free access to the courts to secure and defend their rights without fear of harassment by later suits. Second, the courts rely on the privilege to prevent the proliferation of lawsuits after the first one is resolved. Third, the privilege facilitates crucial functions of the trier of fact." (*Mattco Forge v. Arthur Young & Co., supra,* 5 Cal.App.4th at p. 402.)

privilege for communications in judicial proceedings is not automatically converted to a *constitutionally* based protection such as that provided in section 425.16. The two statutes "are not substantively the same. . . . '. . . The former enshrines a substantive rule of law that grants absolute immunity from tort liability for communications made in relation to judicial proceedings [citation]; the latter is a procedural device for screening out meritless claims [citation].' [Citation.] [¶] Nor do the two statutes serve the same purposes. The litigation privilege embodied in Civil Code section 47, subdivision (b) serves broad goals of guaranteeing access to the judicial process, promoting the zealous representation by counsel of their clients, and reinforcing the traditional function of the trial as the engine for the determination of truth. Applying the litigation privilege to some forms of unlawful litigation-related activity may advance those broad goals notwithstanding the 'occasional unfair result' in an individual case. [Citations.] [¶] Section 425.16 is not concerned with securing for litigants freedom of access to the judicial process. The purpose of section 425.16 is to protect the valid exercise of constitutional rights of free speech and petition from the abuse of the judicial process (§ 425.16, subd. (a)), by allowing a defendant to bring a motion to strike any action that arises from any activity by the defendant in furtherance of those rights." (*Flatley v. Mauro, supra*, 39 Cal.4th at pp. 323–324; see also *Century 21 Chamberlain & Associates v. Haberman* (2009) 173 Cal.App.4th 1, 10 [92 Cal.Rptr.3d 249] ["statements protected by the litigation privilege are not necessarily protected by the anti-SLAPP statute"].)°

Had appellant's motion proceeded to the second step of the SLAPP analysis requiring respondents to demonstrate a probability of prevailing on their complaint, we would consider whether appellant was immune from liability for his communicative acts under Civil Code section 47. (See, e.g., *GeneThera, Inc. v. Troy & Gould Professional Corp.* (2009) 171 Cal.App.4th 901, 909–910 [90 Cal.Rptr.3d 218] [plaintiffs unable to show probability of prevailing where conduct was subject to litigation privilege].) We need not reach this question, however, as appellant failed to meet his initial burden in the SLAPP analysis. (See *Martinez v. Metabolife Internat., Inc., supra*, 113 Cal.App.4th at pp. 185, 193; *Dyer v. Childress* (2007) 147 Cal.App.4th 1273, 1284 [55 Cal.Rptr.3d 544]; *Kajima Engineering & Construction, Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921, 934–935 [116 Cal.Rptr.2d 187].) Because respondents' lawsuit did not arise from protected speech or petitioning activity within the meaning of section 425.16, appellant's motion to strike the complaint was properly denied.

## *Disposition*

The order is affirmed.

Rushing, P. J., and Premo, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 28, 2010, S180515.