Filed 6/27/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| OLD REPUBLIC CONSTRUCTION PROGRAM GROUP,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>THE BOCCARDO LAW FIRM, INC.<br><br>    Defendant and Appellant. | H037989<br>(Santa Clara County<br> Super. Ct. No. CV203288) |

Defendants Boccardo Law Firm (Boccardo) and one of its partners, John C. Stein, bring this appeal from an order denying their motion under the anti-SLAPP law (Code Civ. Proc., § 425.16 (§ 425.16)), to strike three causes of action asserted against them by plaintiff  Old Republic Construction Program Group (Old Republic).  The question presented is whether the statute applies to claims alleging that defendants wrongfully withdrew settlement funds derived from a now-defunct lawsuit, which they had deposited in their trust account pursuant to a stipulation requiring Old Republic's consent to any withdrawal.  In answering this question we apply two principles that have perhaps not been as clearly articulated in the case law as they should be:  (1) in determining whether a cause of action arises from conduct protected by the statute, the focus is on the *wrongful, injurious* conduct identified in the complaint, and whether that conduct comes within the statute's description of protected conduct; and (2) unless the wrongful conduct is communicative in character, it is protected by the statute only if it was undertaken in

connection with an issue of public importance. Because the withdrawal of funds underlying the causes of action at issue was neither communicative nor related to an issue of public interest, the trial court properly denied a motion to dismiss those causes of action. We will therefore affirm the order.

## BACKGROUND

### A. *The Carabello Action*

Defendants Boccardo and Stein filed an action for damages in San Joaquin Superior Court on behalf of Albert Carabello, alleging that he had been injured when his pickup collided with a vehicle operated by Beverly Casby, the defendant in that action.[1] Casby was insured under a policy of automobile insurance with liability coverage of $100,000.

It is apparently undisputed that at the time of the collision, Carabello was acting in the course and scope of his employment. Plaintiff Old Republic was the workers' compensation insurer for Carabello's employer. It provided benefits which it claims exceeded $100,000. It filed a complaint in intervention in the San Joaquin action, asserting a right to reimbursement of these expenditures.

In answer to both Carabello's and Old Republic's complaints, Casby raised the affirmative defense of *Witt v. Jackson* (1961) 57 Cal.2d 57, which limits the ability of an employer, or its insurer, to obtain reimbursement out of an injured worker's recovery against a third party where the employer's own negligence contributed to the worker's injuries. (See 2 Witkin, Summary of Cal. Law (10th ed. 2005) Workers Compensation, § 92, pp. 653-655; *Levels v. Growers Ammonia Supply Co.* (1975) 48 Cal.App.3d 443.)

Carabello and Casby agreed to settle the case for her $100,000 policy limits. Old Republic's claim to reimbursement, however, remained unresolved. Accordingly,

---

[1] Both parties' spouses were also joined in the action, but this fact has not been mentioned by the parties and will likewise be disregarded by us.

Casby's insurer made the settlement check payable to Carabello, Boccardo, and Old Republic. Stein and counsel for Old Republic therefore signed a written stipulation stating "that the $100,000.00 settlement money . . . will be deposited into an interest bearing account" and that "[s]ignatures of both parties will be required to withdraw any money." It was apparently understood that the funds would be placed in defendants' client trust account. The settlement check was duly endorsed and deposited.

On December 14, 2009—the same day he signed the stipulation—counsel for Old Republic filed a motion "for apportionment of settlement proceeds," to be heard on January 10, 2010. The motion asserted an entitlement to the entire settlement fund, but did not mention the issue of employer negligence. Stein later asserted that he objected to the motion at a December 18 case management conference, arguing that it "was not well taken because, as part of the settlement agreement, we had agreed to litigate against the Intervener and fully assert *Witt v. Jackson* (1961) 2 Cal.2d 57, as a defense to their lien." According to him, the court set August 9, 2010, for a "[t]rial of that matter," to be preceded by a mandatory settlement conference on July 6, 2010.

After the December conference, Old Republic withdrew its motion for apportionment. About a month later, on January 19, 2010, counsel for Old Republic filed a notice of lien seeking to recover $111,026.33 "against any settlement of [*sic*] judgment in this action." At the same time, counsel filed a request to dismiss Old Republic's complaint in intervention with prejudice. The record contains no explanation for this action. Nor does it show that Old Republic notified Boccardo or Stein of the dismissal. About three weeks later, Stein dismissed the Carabello complaint with prejudice. The request recited that it was made "[a]s to defendants Beverly Casby and Gerald Casby only" and that "Plaintiff and Intervenor have Trial August 9, 2010 to resolve liens." However, the dismissal of the complaint meant that there was no longer any pleading before the court seeking affirmative relief.

3

The trial court apparently conducted a settlement conference on July 6, 2010.

Stein later asserted that it was during this conference, or shortly before it, that he became

aware of Old Republic's dismissal of the complaint in intervention. Upon learning of it,

he sought a hearing on shortened time for a motion authorizing release of the settlement

funds to Carabello. He argued that by dismissing its pleading, Old Republic had forfeited

any right to litigate the issue of employer negligence, and thus to recover on its lien. The

trial court, however, concluded that the dismissal of all affirmative pleadings had

deprived it of any power to grant the requested relief. In a formal order the court wrote,

"This case has been dismissed in its entirety. This Court has no further jurisdiction." It

does not appear that either party sought relief from this order.

On July 9, 2010, Stein wrote to counsel for Old Republic indicating that he

intended to distribute the deposited funds.[2] He again asserted that by dismissing its

complaint Old Republic had given up the right to seek reimbursement. He took issue

with a prior assertion by opposing counsel "that the matter can be litigated before the

WCAB [(Workers' Compensation Appeals Board)]." He offered to forbear from

withdrawal for one week to "give you time to go to the WCAB and get a Restraining

Order prohibiting me from disbursing my settlement." Old Republic apparently did

nothing. On July 28, Stein wrote that having just received the court's formal order

disclaiming the power to grant relief, he was disbursing the funds to his client forthwith.

### B. The Workers' Compensation Board Petition

On September 14, 2010, Old Republic petitioned the WCAB to order

disbursement of the settlement proceeds. Stein filed a trial brief in which he conceded

that the WCAB had jurisdiction to determine Old Republic's entitlement to credit against

future benefits. He argued, however, that the superior court had exclusive jurisdiction to

---

[2] Stein later declared that at the time of this letter, his client Carabello was "about to lose his house" and was insisting on release of the funds.

4

determine the *Witt v. Jackson* issues as they might affect the existing settlement proceeds, and that Old Republic had lost the opportunity to secure an adjudication of that issue by dismissing its complaint in intervention.

On February 2, 2011, a workers' compensation judge denied Old Republic's petition for disbursement. He found that the settlement funds had already been "disbursed by applicant's counsel." He also concluded that the WCAB lacked jurisdiction to grant the relief sought by Old Republic. On April 25, 2011, the WCAB granted reconsideration of that decision "to further study the factual and legal issues in this case." The WCAB apparently issued a decision on September 12, 2013, finding that it had jurisdiction over the issues presented, and remanding them for trial.[3]

### C. *The Present Action*

Old Republic filed the complaint in this matter on June 16, 2011. Although it names only Boccardo and Stein as defendants, it alleges that the stipulation of December 14, 2009, was a binding contract "between plaintiff, Albert Carrabello [*sic*], and The Boccardo Law Firm." The first cause of action alleges that "defendants"—i.e., Boccardo and Stein—breached this contract "by disbursing the settlement proceeds without the signature and/or consent of [Old Republic]." The second cause of action charges defendants with fraudulently inducing Old Republic to assent to the placement of funds in Boccardo's trust account by falsely promising not to distribute funds "until both

---

[3] Defendants notified this court of the WCAB decision about six months after it issued, following this court's promulgation of notice of oral argument. We were presented with no formal request to augment the record (see Cal. Rules of Court, rule 8.155), or for judicial notice (Evid. Code, § 459), and no certified copy of the decision (see *People v. Preslie* (1977) 70 Cal.App.3d 486, 494). No request to dismiss the appeal was made. (See Cal. Rules of Court, rule 8.244(c).) This court has expended considerable effort in resolving the difficult and important issues presented by this appeal, none of which appear to be subject to adjudication in the WCAB proceeding. Therefore, insofar as the filing described above conveyed a suggestion of mootness, we reject the suggestion and decline to dismiss the appeal on our own motion.

5

parties agreed in [*sic*] the distribution amount." The third cause of action characterizes defendants' distribution of the funds as conversion. The fourth posits that defendants' withdrawal of funds breached a fiduciary duty to Old Republic. The fifth alleges that defendants breached a duty of care to Old Republic by "negligently and carelessly distribut[ing] the funds" without Old Republic's consent. The sixth cause of action seeks declaratory relief, in that Old Republic "conten[d]s it is entitled to some or all of the settlement proceeds and defendants contend that plaintiff is not entitled to any and has [*sic*] in fact distributed the settlement proceeds."

On August 5, 2011, defendants demurred to all causes of action. The court sustained the demurrer with leave to amend as to the third cause of action (conversion) and fourth cause of action (breach of fiduciary duty) on grounds of failure to state facts sufficient to constitute a cause of action. The demurrer was otherwise overruled. Old Republic did not amend the complaint.

On November 8, 2011, defendants filed a motion to dismiss the remaining causes of action under the anti-SLAPP law (§ 425.16). They prayed in the alternative to stay the matter pending disposition of the WCAB proceeding. The court granted the motion to strike as to the second cause of action (fraud), but denied it with respect the first (contract), fifth (negligence), and sixth (declaratory relief) causes of action. The court denied the motion to stay proceedings. Defendants promptly filed a notice of appeal.[4]

---

[4] Although we have found no case squarely so holding, it appears that an immediate appeal by the moving party will lie from an order denying a SLAPP motion as to some causes of action, even though the motion is granted as to others. The statute does not by its terms impose any limitation on the right to appeal, stating only that "An order granting or denying a special motion to strike shall be appealable under Section 904.1." (§ 425.16, subd. (i); see Code Civ. Proc., § 904.1, subd. (13) [authorizing appeal "[f]rom an order granting or denying a special motion to strike under Section 425.16"].) Many courts have entertained appeals from orders granting or denying a SLAPP motion as to some but not all causes of action. (E.g., *City of Colton v. Singletary* (2012) 206 Cal.App.4th 751, 757 [appeal from order striking two of six causes of action]; *Fontani v. Wells Fargo Investments, LLC* (2005) 129 Cal.App.4th 719, 725 [order striking two of

6

**DISCUSSION**

## I. *Procedural Framework*

The anti-SLAPP law authorizes a defendant to bring a "Special Motion to Strike" any cause of action "arising from any act of [the defendant] in furtherance of [the defendant's] right of petition or free speech . . . in connection with a public issue." (§ 425.16, subd. (b)(1).) The statute goes on to enumerate four classes of conduct, described in greater detail below, that come within its protection. (*Id*., subd. (e).) Any cause of action "arising from" protected conduct shall be stricken on the defendant's motion, unless the plaintiff establishes a "probability that [he or she] will prevail on the claim." (*Id*., subd. (b)(1).)

The statute thus mandates a two-step analysis. The first step is to determine whether the moving party has shown that the targeted cause of action arises from conduct protected by the statute. (*Martinez v. Metabolife International, Inc.* (2003) 113 Cal.App.4th 181, 186.) If the answer is yes, the court considers whether the plaintiff has established the requisite probability of success. (*Ibid*.) As to both questions, a reviewing court applies its independent judgment, without deference to the trial court's ruling. (*Cabral v. Martins* (2009) 177 Cal.App.4th 471, 478.) Of course, there is no occasion to consider the likelihood of success unless the action arises from protected activity.

## II. *For Purposes of the Anti-SLAPP Statute, the Challenged Causes of Action Arose from Defendants' Withdrawal of Funds, Not from the Parties' Stipulation*

We are concerned on this appeal with only three of Old Republic's six original causes of action: breach of contract, negligence, and declaratory relief. The question whether these causes of action arise from protected activity involves two subsidiary inquiries: (1) From what acts or omissions do these causes of action arise, for purposes

---

10 causes of action], disapproved on another point in *Kibler v. Northern Inyo County Local Hosp. Dist.* (2006) 39 Cal.4th 192, 203, fn. 5.)

of applying this statute; and (2) do those acts or omissions come within the statute's definition of protected conduct?  With respect to the first question, defendants assert at one point in their brief that the targeted causes of action "all aris[e] from [the] stipulation" which resulted in the deposit of settlement funds in defendants' trust account. If true this would bring these causes of action within the statute's protection, because the stipulation was a "writing made in connection with an issue under consideration or review by a . . . judicial body."  (§ 425.16, subd. (e)(2).)  The function of the stipulation was to hold the settlement funds in stasis pending an adjudication of Old Republic's right to reimbursement—an issue, as the court below noted, "still under consideration by the San Joaquin County Superior Court."  In this regard the case appears materially identical to *Navellier v. Sletten* (2002) 29 Cal.4th 82, 90, where the court stated that the defendant's "negotiation and execution of [a] Release . . . involved 'statement[s] or writing[s] made in connection with an issue under consideration or review by a . . . judicial body' " as protected under section 425.16, subdivision (e)(2).  We see no reason to doubt that this same conclusion applies here.

However, this only establishes that any cause of action arising from the stipulation would be protected by the statute.  It leaves unanswered the question whether the three causes of action before us arose from the stipulation.  (*Id*., subd. (b)(1).)  The question whether a cause of action arises from specified conduct for purposes of the statute depends on " 'the *principal thrust* or *gravamen* of the plaintiff's cause of action.' " (*Robles v. Chalilpoyil* (2010) 181 Cal.App.4th 566, 575, quoting *Martinez v. Metabolife International*, *supra*, 113 Cal.App.4th 181, 188; see *Ramona Unified School Dist. v. Tsiknas* (2005) 135 Cal.App.4th 510, 519-520; *In re Episcopal Church Cases* (2009) 45 Cal.4th 467, 477; cf. *Wang v. Wal–Mart Real Estate Business Trust* (2007) 153 Cal.App.4th 790, 802 [applicability of statute depends on "principal thrust or predominant nature of the complaint"].)  It is not enough that the complaint refers to

8

protected activity. " '[W]hen the allegations referring to arguably protected activity are only incidental to a cause of action based essentially on nonprotected activity, collateral allusions to protected activity should not subject the cause of action to the anti-SLAPP statute.' " (*Robles v. Chalilpoyil, supra,* 181 Cal.App.4th at p. 575.)

The concepts of "principal thrust" and "gravamen," however, may be too indefinite and abstract to provide a clear rule with predictable results. (See *Hydro-Mill Co., Inc. v. Hayward, Tilton and Rolapp Ins. Associates, Inc.* (2004) 115 Cal.App.4th 1145, 1153 [test for determining applicable limitations period variously stated as " ' "the 'gravamen' of the cause of action," ' " " ' " '[t]he nature of the right sued upon,' " ' " and " 'the primary interest invaded by defendant's wrongful conduct' "]; *Vafi v. McCloskey* (2011) 193 Cal.App.4th 874, 880 [equating " 'gravamen' " with "principal purpose . . . of the action"]; *Cheong Yu Yee v. Cheung* (2013) 220 Cal.App.4th 184, 194 [same]; Black's Law Dict. (9th ed. 2009) p. 770, col. 1 [defining "gravamen" as "[t]he substantial point or essence of a claim, grievance, or complaint"]; 6 Oxford English Dict. (2d ed. 1989) p. 781 ["[t]he particular part of an accusation that bears most heavily on the person accused"]; 3 Witkin, Cal. Procedure (5th ed. 2008) Actions, § 506, p. 648 [in limitations context, where contract may sound in both contract and tort, courts sometimes "arbitrarily assign a 'gravamen' to the suit, subjecting it to the shorter tort statute"].)

Fortunately the cases suggest a more concrete test: a cause of action arises from protected conduct if the *wrongful, injurious act(s)* alleged by the plaintiff constitute protected conduct. (See *Coretronic Corp. v. Cozen O'Connor* (2011) 192 Cal.App.4th 1381, 1389 ["Determining the gravamen of the claims requires examination of the specific acts of alleged wrongdoing and not just the form of the plaintiff's causes of action."]; *ibid.* [court reviews record "to determine what conduct is actually being challenged"]; *Martinez v. Metabolife International*, *supra*, 113 Cal.App.4th 181, 188 [protected speech, though mentioned in complaint, was not gravamen of claims; it was

9

"largely unrelated to and entirely distinct from the wrongful, injury-causing conduct" on which claims rested]; *id.* at p. 189 ["wrongful and injury-causing conduct" alleged by plaintiff was distinct from any engagement by defendant in expressive conduct]; *id.* at p. 193 [alleged "wrongful injury producing conduct" was manufacture and sale of defective product, not labeling and advertising of product]; *Scott v. Metabolife Intern., Inc.* (2004) 115 Cal.App.4th 404, 416-417 [although warranty and fraud causes of action would require "proof of some speech," they did not arise of out of protected activities; "the wrongful injury-producing conduct on which these claims are based arises from the nature of the defective product"]; *Gallimore v. State Farm Fire & Casualty Ins. Co.* (2002) 102 Cal.App.4th 1388, 1399; second italics in original [SLAPP motion would not lie merely because charges of unlawful claims practices relied on insurer's submissions to public agency; insurer's invocation of statute "confuse[d] [its] allegedly *wrongful acts* with the *evidence* that plaintiff will need to prove such misconduct"]; *ibid.* ["We thus conclude that the alleged wrongful acts of State Farm were not done in furtherance of any claimed right of petition or free speech."]; *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78, some italics added [for cause of action to " 'aris[e] from' " protected activity, "the defendant's *act underlying the plaintiff's cause of action* must *itself* have been an act in furtherance of the right of petition or free speech. [Citation.] In the anti-SLAPP context, the critical point is *whether the plaintiff's cause of action* was *based on* an act in furtherance of the defendant's right of petition or free speech. [Citations.]"]; *Navellier v. Sletten*, *supra*, 29 Cal.4th 82, 92, second italics added [statute's "definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity that gives rise to his or her asserted liability*—and whether that activity constitutes protected speech or petitioning"].)

We think the foregoing judicial authorities, and the statute itself, are best understood to mean that a cause of action can only be said to arise from protected

10

conduct if it alleges at least one *wrongful* act—conduct allegedly *breaching a duty and thereby injuring the plaintiff*—that falls within the act's definition of protected conduct.

The causes of action at issue here refer to, and may depend on, defendants' having entered into the stipulation, which was itself protected conduct; but they do not assert that there was anything wrongful about that conduct. In this regard the three causes of action now before us differ from the fraud cause of action, as to which the trial court granted the SLAPP motion. As the court recognized, that cause of action "ar[o]s[e] from the stipulation." The underlying wrongful conduct was defendants' alleged *entry into the stipulation* without the intention to be bound by it, thereby inducing Old Republic to do likewise and depriving it of control over the settlement funds. With respect to the remaining three claims, however, there was nothing wrongful about the stipulation itself; entry into it is not the injurious conduct alleged. Rather, under those three causes of action Old Republic's injury arose from defendants' withdrawal of the funds that were the subject matter of the stipulation. That is the conduct by which defendants allegedly breached the contract between the parties, violated a duty of care, and injured Old Republic. It is that conduct from which these causes of action must be held to arise. For purposes of the SLAPP statute, the stipulation must be viewed as incidental. (Cf. *Navellier v. Sletten*, *supra*, 29 Cal.4th 82, 92 [recognizing distinction between formation and breach of settlement agreement, but holding that under facts there, both were protected conduct].)

To hold otherwise would produce consequences the Legislature cannot have intended. If the protected status of an underlying agreement furnished sufficient ground to invoke the anti-SLAPP statute against a claim for breach of that agreement, it would follow that *every* suit to enforce a settlement agreement would be subject at the threshold to a SLAPP motion. Such a regime would significantly diminish the utility of such agreements, reduce the incentive for parties to enter into them, and thereby magnify the

11

workload on courts, with attendant delay and expense for those who must resort to them. It follows that merely citing a settlement agreement as the basis for a duty allegedly breached by the defendant is not enough, by itself, to bring a cause of action for the breach within the statute. The trial court correctly concluded that these three causes of action did not arise from the parties' stipulation for purposes of the SLAPP act.

### III. *The Withdrawal of Funds Was Not Protected Conduct Because It Was Neither Communicative Nor Connected with an Issue of Public Interest*.

Given our conclusion that the withdrawal of funds was the wrongful conduct constituting the gravamen of these causes of action, the question becomes whether that conduct was itself protected by the statute. Defendants' entire argument on this point is devoted to the proposition that withdrawal of the settlement funds was an act in furtherance of their client's right to petition, as exercised in the underlying lawsuit. We find this characterization, even if accepted, insufficient to bring the causes of action at issue here within the ambit of the statute. Since the allegedly wrongful conduct was not communicative, it could be brought within the statute's protection only by showing that it was connected to a public issue. Failure to make such a showing was fatal to defendants' motion, insofar as it targeted these causes of action.

Section 425.16, subdivision (b), describes the activity protected under the statute as "any act of [the defendant] in furtherance of [the defendant's] right of petition or free speech . . . *in connection with a public issue*." (Italics added.) Section 425.16, subdivision (e) identifies four classes of activities that will be deemed to fall within this description: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place

12

open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech *in connection with a public issue or an issue of public interest*." (Italics added.)

The first two classes of conduct involve forms of *speech* that satisfy certain conditions—roughly, that they take place in the course of an official proceeding, or in connection with an issue under consideration in an official proceeding. The third category is a sort of hybrid; it involves speech, but conditions protection on both its circumstances ("in a place open to the public or a public forum") and content or purpose ("in connection with an issue of public interest"). (§ 425.16, subd. (e)(3).) The fourth category is broader than the other three in the sense that it is not limited to speech but may extend to "any . . . conduct." (§ 425.16, subd. (e)(4).) It is narrower, however, in that it applies only if the conduct is undertaken "in furtherance of the exercise of the . . . right of petition or . . . right of free speech connect[ed] with a public issue or an issue of public interest." (§ 425.16, subd. (e)(4).)

It cannot be seriously suggested that withdrawing funds from a bank account constitutes communicative conduct so as to fall within any of the first three statutory categories. It necessarily involves some communication between the account holder and the bank; that communication may take the form of a "written or oral statement or writing" such as a check or an instruction to a teller or other agent of the bank. But such a communication serves merely as a means of effecting the transfer of funds out of the affected account. It is that transfer, not the communication by which it was effected, that lies at the heart of Old Republic's cause of action.

It follows that if the withdrawal of funds is to be brought within any of the protected categories, it must be brought within section 425.16, subdivision (e)(4). But that can only be accomplished if the withdrawal took place "*in connection with a public*

13

*issue or an issue of public interest*." (*Id*., subd. (e)(4), italics added.) Defendants have made no attempt to satisfy this condition. Indeed, both parties seem to have overlooked it. This court, however, has twice acknowledged and applied it in published decisions. In *PrediWave Corp. v. Simpson Thacher & Bartlett LLP* (2009) 179 Cal.App.4th 1204, 1226, we wrote that "only one of the four categories of protected activity covers [noncommunicative] conduct (§ 425.16, subd. (e)(4) . . .) and that type of protected activity must have taken place 'in connection with a public issue or an issue of public interest.' (See *Briggs v. Eden Council for Hope & Opportunity* [(1999)] 19 Cal.4th [1106,] 1117, 1123, 81 Cal.Rptr.2d 471, 969 P.2d 564.)" We were there concerned with the statute's applicability to an action by a corporation and other aligned entities against attorneys who had represented both the corporation and a corporate officer. We observed that some of the firm's alleged misdeeds were "[c]learly" not "statements or writings" protected by the statute. (*Id.* at p. 1227.) Nor was there any "showing that any of defendants' allegedly wrongful conduct, not consisting of statements or writings, occurred 'in connection with a public issue or an issue of public interest.' (§ 425.16, subd. (e)(4).)" (*Ibid*.) To that extent, at least, the defendants' conduct fell outside the statute's protection.

The following year, in *Robles v. Chalilpoyil, supra,* 181 Cal.App.4th 566, 580, footnote 2, we addressed a claim arising from the defendant's activities while engaged as an expert witness in a wrongful death action. In one cause of action, the defendant was charged with "(1) falsely testifying in his deposition regarding his presence at the product-testing session and (2) 'failing to continue to act as an independent expert and/or disrupting the prosecution of the [previous] case by entering into a business relationship' " impairing his utility as an expert. (*Id.* at pp. 575-576.) "The conduct described in the second allegation," we observed, "was not a written or oral statement, nor was it 'conduct . . . in connection with a public issue or an issue of public interest.'

14

(§ 425.16, subd. (e)(4).)" (*Id.* at p. 576.) Accordingly it was not within the statute's protection. (*Ibid.*)

In both of these cases we expressly questioned the soundness of *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, insofar as that case might imply that the statute's protection may encompass noncommunicative conduct unconnected to any public issue. (*PrediWave Corp. v. Simpson Thacher & Bartlett LLP*, *supra*, 179 Cal.App.4th at p. 1226; *Robles v. Chalilpoyil*, *supra*, 181 Cal.App.4th at p. 580, fn. 2.) Needless to say, defendants' heavy reliance on that case is unavailing here. The same is true of *Thayer v. Kabateck Brown Kellner LLP* (2012) 207 Cal.App.4th 141, which defendants also cite repeatedly. That was an action against a law firm for its conduct in prosecuting and settling a class action. (*Id.* at p. 145.) Defendants cite the case for its holding that the complaint there arose from protected activity, and thus was subject to a SLAPP motion. But the court did not discuss whether the specific conduct at issue was communicative or whether, if not, it was connected with a public issue. To the extent that either case may be understood to extend the statute's protection to noncommunicative conduct unrelated to a public issue, we decline to follow them and adhere instead to our own previous decisions.

We are not the first or only court to recognize that the statute protects noncommunicative conduct only when the conduct is undertaken in connection with a public issue. In *Briggs v. Eden Council for Hope & Opportunity*, *supra*, 19 Cal.4th 1106, 1111, the defendants in a libel action brought a SLAPP motion on the ground that the allegedly defamatory statements were "made in connection with issues pending before or under consideration by executive and judicial bodies" and thus fell within the first two categories of section 425.16, subdivision (e). The plaintiffs responded that the statements were not protected because they "did not involve matters of 'public significance' " as contemplated by the statute's declaration of purpose. (*Ibid.*, quoting § 425.16,

15

subdivision (a).)[5]  The trial court granted the motion and dismissed the action, but the Court of Appeal reversed, holding "impliedly" that a statement by the defendant receives statutory protection only if it "addresses an issue of public significance." (*Ibid.*)  The Supreme Court reversed, holding that a statement described in subdivision (e)(1) or (e)(2) of section 425.16 falls under the statute's protection whether or not the statement—or the proceeding—concerns a matter of public significance. (*Id.* at pp. 1109, 1113.)  In reaching this conclusion, the court emphasized that the Legislature had expressly included a public issue element in section 425.16, subdivisions (e)(3) and (e)(4), while omitting it from subdivisions (e)(1) and (e)(2).  "Where different words or phrases are used in the same connection in different parts of a statute, it is presumed the Legislature intended a different meaning. [Citation.]  Clauses (3) and (4) . . . , concerning statements made in public fora and 'other conduct' implicating speech or petition rights, include an *express 'issue of public interest' limitation*; clauses (1) and (2), concerning statements made before or in connection with issues under review by official proceedings, contain no such limitation.  In light of this variation in phraseology, it must be presumed *the Legislature intended different 'issue' requirements to apply to anti-SLAPP motions brought under clauses (3) and (4)* of subdivision (e) than to motions brought under clauses (1) and (2). [Citation.] . . . [¶]  If, as plaintiffs contend, the operative language in section 425.16, subdivision (b), referring to a person's exercise of First Amendment rights 'in connection with a public issue,' were meant to function as a separate proof requirement applicable to motions brought under all four clauses of subdivision (e), no

---

[5]  "The Legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.  The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process.  To this end, this section shall be construed broadly." (§ 425.16, subd. (a).)

16

purpose would be served by the Legislature's specification in clauses (3) and (4) that *covered issues must be 'of public interest.' "* (*Id.* at pp. 1117-1118; see *Blackburn v. Brady* (2004) 116 Cal.App.4th 670, 675 ["only if the defendant's alleged acts or statements fall under the third or fourth categories of subdivision (e) of section 425.16, is the defendant required to independently demonstrate that the matter is a 'public issue' within the statute's meaning"]; *Garretson v. Post* (2007) 156 Cal.App.4th 1508, 1515 ["If the alleged protected activity occurs in the context of a public or official proceeding, as stated above in (1) or (2), there is no additional requirement that it be connected with an issue of public importance."]; *Martinez v. Metabolife International*, *supra*, 113 Cal.App.4th 181, 188, italics added ["[A] defendant in an ordinary *private* dispute cannot take advantage of the anti-SLAPP statute simply because the complaint contains some references to speech or petitioning activity by the defendant."].)

Again, we are here concerned with only the first, fifth, and sixth causes of action, sounding respectively in breach of contract, negligence, and declaratory relief. The conduct at the center of all three causes of action is defendants' withdrawal and disbursement of the settlement funds that were the subject of the stipulation between defendants and counsel for Old Republic. There is no suggestion that this noncommunicative conduct had any connection to any issue of public concern or interest. It therefore falls outside the protection of the statute.

The court properly denied defendants' motion to summarily dismiss the first, fifth, and sixth causes of action under the anti-SLAPP statute. Nothing in our opinion should be understood to suggest that these causes of action are meritorious. We are solely concerned with the question whether they are subject to the extraordinary remedy of expedited disposition by special motion to strike. In holding that they are not, we do not foreclose another pretrial disposition such as summary judgment.

17

**DISPOSITION**

The order appealed from is affirmed.

_____
RUSHING, P.J.

WE CONCUR:

_____
ELIA, J.

_____
MÁRQUEZ, J.

*Old Republic Construction Program Group v. The Boccardo Law Firm Inc.*
**H037989**

18

Trial Court:                                Santa Clara County Superior Court
                                            Superior Court No.:  CV203288


Trial Judge:                                The Honorable
                                            Peter H. Kirwan


Attorneys for Defendant and Appellant       The Boccardo Law Firm Inc.
The Boccardo Law Firm Inc.:                 John C. Stein

                                            Linda S. Votaw


Attorneys for Plaintiff and Respondent      Branson, Brinkop, Griffith & Strong
Old Republic Construction Program Group:     Kenneth W. Sandall


***Old Republic Construction Program Group v. The Boccardo Law Firm, Inc.***
**H037989**