Filed 9/4/13  Perez v. Kouretas

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| RAFAEL PEREZ et al.,<br><br>    Plaintiffs and Appellants,<br><br>  v.<br><br>JAMES KOURETAS,<br><br>    Defendant and Respondent. | C068234<br><br>(Super. Ct. No.<br>34201000086964CUCOGDS) |

Plaintiffs Rafael Perez (Rafael), Pedro Perez (Pedro), and David Hurley (Hurley) (sometimes collectively, plaintiffs) appeal the trial court's order granting defendant James Kouretas's special motion to strike under the anti-SLAPP statute (Code Civ. Proc., § 425.16 (hereafter § 425.16)).  We conclude the court erred in granting the anti-SLAPP motion and reverse the order and judgment of dismissal as well as the attorney's fee award in Kouretas's favor.

1

FACTS AND PROCEEDINGS

The following facts are taken from plaintiffs' complaint and the declarations supporting and opposing the motion to strike. Faye Stearns, an elderly woman, owned a card room in Sacramento called Duffy's. She held the gambling license for the establishment. In December 2004, Duffy's was destroyed by a fire. Although Stearns wanted to reopen the business, she did not have the financial means to do so. Through acquaintances at the card room, Rafael learned that Stearns was seeking help to reopen Duffy's.

Stearns and Rafael met several times following the fire. On January 7, 2005, they executed a written partnership agreement to reopen the card room (Rafael-Stearns Agreement). That same day Stearns also executed a Gambling Control Commission form designating Rafael as her agent to "represent all of [D]uffy's future license transactions, Table fees, and business promotions," and, as her designated agent, Rafael submitted an application to the Gambling Commission to renew Stearns's state gambling license.

The Rafael-Stearns Agreement lists the nature of the partnership's business as "Card Room License (Game Room)." According to the agreement, Rafael and Stearns would contribute capital and split profits and losses on a 60-40 percent basis, respectively. Rafael was to have sole control over managing the business and was responsible for paying all start up expenses, including application and licensing fees and employee salaries. The place of business in Sacramento was yet to be determined.

The partnership between Rafael and Stearns was to last five years; Rafael would then become the sole owner of the business. The Rafael-Stearns Agreement was assignable, and Stearns did not object to Rafael securing investors to fund the project.

Rafael contacted his father, Pedro, and Hurley to invest in the card room. By early February, Rafael, Hurley and Pedro executed an agreement entitled "Duffy's Card Room Agreement[:] Statement to Establish a Business Partnership" (Perez-Hurley Agreement)

2

to open the poker card room. The agreement recites that it was executed "with the full knowledge and consent from Mrs [*sic*] Faye Stearn [*sic*] and Rafael Perez." According to this second partnership agreement, legal counsel would be retained to obtain all necessary licensing requirements for the card room.

Rafael, purportedly with Stearns's consent, assigned his 60 percent interest in the Rafael-Stearns partnership to the Perez-Hurley partnership formed by the three men. Rafael provided Stearns with a copy of the Perez-Hurley Agreement.

In the middle of February 2005, Rafael prepared a letter on Stearns's behalf requesting that the City of Sacramento (City) renew her card room license at a new location. That same month, Rafael retained attorney Robert Tabor on behalf of the four partners to obtain the necessary approvals to reopen the card room. Pedro and Hurley were to pay Tabor's attorney's fees; Stearns was not responsible for any fees. Tabor submitted applications to the Gambling Control Commission for Pedro and Hurley to become "key employees" of the card room. A "key employee" is "any natural person employed in the operation of a gambling enterprise in a supervisory capacity or empowered to make discretionary decisions that regulate gambling operations . . . ." (Bus. & Prof. Code, § 19805, subd. (x).) Key employees are licensed by the Gambling Control Commission. (Bus. & Prof. Code, §§ 19850, 19854.)

Although Tabor secured several extensions of Stearns's gambling license, by June 2006 Tabor had missed some permit filing deadlines or table fee payments necessary to renew the card room business license. On June 6, 2006, the City informed Stearns that her card room license had been automatically revoked because she failed to reopen Duffy's within 90 days of the fire as required by a City ordinance. According to the City, the license would be placed in a lottery to be awarded to a member of the public. Tabor wrote a letter appealing the decision, but the City claimed it never received it and concluded its decision was final.

Around July 2006, defendant Kouretas, a local attorney, contacted Stearns about helping with the gaming license issue. Stearns told Rafael about Kouretas's call. Rafael later contacted Kouretas about representing the four partners in getting the license renewed. Kouretas explained that he had experience in gaming matters and he agreed to meet with the group.

In early October 2006, Rafael, Pedro, Hurley, and Stearns met with Kouretas at his law office. At the meeting they told Kouretas about their previously formed partnerships. Kouretas requested to review Tabor's file with everything that had been done to that point. Kouretas even recommended the group consult a malpractice attorney to file an action against Tabor for missing the filing deadlines.

Although Kouretas denies it, plaintiffs claim Kouretas agreed to represent the partnership and all four partners in securing the necessary approvals to reopen the card room. When asked how much he was going to charge them, Kouretas replied that it could be determined at another time. According to Kouretas, he later agreed to represent Stearns only and had decided to invest in the card room with her alone. He agreed to represent her for free.

A few weeks later Kouretas again met with Rafael, Pedro, Hurley and Stearns to discuss the card room licensing issues. Kouretas reconfirmed that he would represent them in obtaining the necessary approvals for reopening the card room. Rafael provided Kouretas with copies of the Rafael-Stearns Agreement and the Perez-Hurley Agreement as well as other documents relating to the gambling license and card room. At the end of the meeting, Pedro raised the issue of a fee agreement. Like before, Kouretas said that the fee arrangement could be discussed later.

Pedro subsequently terminated Tabor as the partners' attorney, retrieved their client file from Tabor's office, and delivered it to Kouretas's law firm. Kouretas reviewed the file.

4

Following these initial meetings, Kouretas met with plaintiffs on several more occasions, with and without Stearns. During these subsequent meetings, Kouretas assured plaintiffs he was working on their behalf to obtain the necessary approvals to reopen the card room. Kouretas, however, claimed that due to complications in the approval process, his name rather than plaintiffs' would have to be on the approvals. Kouretas told plaintiffs ownership of the gambling establishment would be transferred to them at a later date.

Meanwhile, and unbeknownst to plaintiffs, Kouretas formed a limited liability company with Stearns and another investor to own and operate the card room. Kouretas was the managing member of the company, holding a 50 percent interest in the business. Kouretas also withdrew Pedro's and Hurley's key employee applications without their knowledge.

Ultimately Kouretas successfully secured the necessary licenses and permits to reopen the card room. After the City finally issued the card room license, Kouretas allegedly called Rafael and told him, "[W]e got your casino." Yet the city business permit was issued to Kouretas, Stearns, and the third member of the limited liability company Kouretas secretly formed with Stearns. The state gambling license was issued to Kouretas's and Stearns's limited liability company. Kouretas leased the casino's new location solely in his name. None of the licenses, permits, or leases were in the name of plaintiffs or their partnerships.

When it later became apparent that Kouretas did not intend to transfer any interest in the card room to plaintiffs as partners in either the Rafael-Stearns partnership or the Perez-Hurley partnership, plaintiffs sued Kouretas. The complaint alleged causes of action for legal malpractice, breach of fiduciary duty, constructive and actual fraud, intentional and negligent interference with prospective economic relations, intentional and negligent interference with contract, negligent misrepresentation and for a constructive trust and preliminary injunction. Kouretas filed a special motion to strike

5

under the anti-SLAPP statute, which the trial court granted. The trial court also awarded Kouretas attorneys' fees and entered a judgment of dismissal. Plaintiffs timely appealed.

DISCUSSION

I

*Standard and Scope of Review*

The question of whether a trial court properly granted a motion to strike under the anti-SLAPP statute is reviewed de novo. (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 999 ["Whether section 425.16 applies and whether the plaintiff has shown a probability of prevailing are both reviewed independently on appeal"].)

Under the anti-SLAPP statute, the court engages in a two-step analysis. First, the court considers whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. (§ 425.16, subd. (b)(1).) The defendant bears the burden of showing the plaintiff's cause of action arises from the defendant's exercise of free speech or petition rights as defined in the statute. (§ 425.16, subd. (e).) If the defendant makes this threshold showing, the burden shifts to the plaintiff to make a prima facie showing of facts which, if credited by the trier of fact, would sustain a favorable judgment. (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 61; *Navellier v. Sletten* (2002) 29 Cal.4th 82, 88.)

The court considers the pleadings and evidence submitted by both sides, but does not weigh credibility or compare the weight of the evidence. Rather, the court's responsibility is to accept as true the evidence favorable to the plaintiff (*Nagel v. Twin Laboratories, Inc.* (2003) 109 Cal.App.4th 39, 45-46), and to evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law. (*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 906.) With these concepts in mind, we turn to plaintiffs' contentions on appeal.

6

## II

### *Anti-SLAPP Motion*

The trial court found Kouretas made a threshold showing that plaintiffs' suit arises from Kouretas's protected activities under section 425.16. The court concluded plaintiffs' complaint arose from Kouretas's written and oral statements to governmental agencies to obtain the gambling license and permits as well as to withdraw Pedro's and Hurley's key employee applications. Our independent review of the record does not support this finding.

According to the complaint, Kouretas, while acting as their attorney and purportedly on their behalf, fraudulently or negligently usurped plaintiffs' business opportunity in the card room. By doing so, plaintiffs allege Kouretas breached his fiduciary duties to them and committed legal malpractice.

While it is true that Kouretas petitioned governmental agencies when seeking to revive the card room and its licenses, it is Kouretas's alleged misdeeds as plaintiffs' attorney--and not his underlying petitioning activity--that is the thrust, or gravamen, of plaintiffs' complaint. (*PrediWave Corp. v. Simpson Thacher & Bartlett LLP* (2009) 179 Cal.App.4th 1204, 1219 ["When a pleading contains allegations regarding both protected and unprotected activity, 'it is the *principal thrust* or *gravamen* of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies' "].) Although a cause of action may be associated with a protected act, it does not follow that the cause of action always *arises from* that act. (*Kolar v. Donahue, McIntosh & Hammerton* (2006) 145 Cal.App.4th 1532, 1537 ["A claim 'arises from' an act when the act ' " 'forms the basis for the plaintiff's cause of action' . . . . " ' "]; *Robles v. Chalilpoyil* (2010) 181 Cal.App.4th 566, 574 [" 'that a cause of action arguably may have been "triggered" by protected activity does not entail that it is one arising from such' "].) Thus, simply because plaintiffs' causes of action are tangentially associated with petitioning

7

governmental agencies to obtain the necessary gambling approvals does not mean that their complaint against Kouretas as their attorney "arises from" such petitioning activity.

As other courts have recognized, suits like plaintiffs' alleging legal malpractice and breaches of the duty of loyalty against former counsel are not subject to a special motion to strike. (*Kolar v. Donahue, McIntosh & Hammerton, supra,* 145 Cal.App.4th at p. 1535 ["Legal malpractice is not an activity protected under the anti-SLAPP statute"]; *Benasra v. Mitchell Silberberg & Knupp LLP* (2004) 123 Cal.App.4th 1179, 1181 [anti-SLAPP statute does not apply to claim for attorney's breach of duty of loyalty]; *PrediWave Corp. v. Simpson Thacher & Bartlett LLP, supra,* 179 Cal.App.4th at p. 1228 [court improperly granted anti-SLAPP motion to complaint alleging causes of action against the plaintiff's former counsel for breach of fiduciary duty, constructive fraud, legal malpractice and unfair business practices].) Similarly, like plaintiffs' claims of fraud and negligence here, a complaint against a former attorney alleging negligence and conspiracy to commit fraud does not involve the exercise of protected petitioning activity even though the attorney's adverse business relationship was formed following litigation on the plaintiff's behalf. (*Robles v. Chalilpoyil, supra,* 181 Cal.App.4th at p. 580 [anti-SLAPP statute inapplicable where "[t]he central subject of the complaint against appellant is not an exercise of free speech or petition but the negligence or fraud inherent in his act of entering into a business relationship to respondents' detriment"].)

That Kouretas allegedly breached his duty of loyalty and committed malpractice and fraud in the course of petitioning certain governmental agencies for the gambling and card room licenses does not mean plaintiffs' claims arose from the petitioning activity itself. It is not, as respondent urges, that Kouretas merely petitioned to have the card room permits and licenses reinstated which gives rise to the complaint. Instead, as plaintiffs' argue, it is that Kouretas, as their attorney, lead plaintiffs to believe that he was engaging in such activities on their behalf and then surreptitiously did so to advance his own personal interests rather than those of his clients. Kouretas's alleged failure to

8

faithfully and loyally pursue the casino and business opportunities for plaintiffs is the real basis of the complaint.

And, at least at this stage of the proceedings, Kouretas's claim that he never represented plaintiffs is irrelevant. The court is bound to accept as true all evidence favorable to plaintiffs unless Kouretas's evidence defeats it as a matter of law. (*Nagel v. Twin Laboratories, Inc., supra,* 109 Cal.App.4th at pp. 45-46; *Kashian v. Harriman, supra,* 98 Cal.App.4th at p. 906.) As the trial court acknowledged, and we agree, the evidence submitted by Kouretas falls far short of showing that he was not plaintiffs' attorney. Because the declarations and exhibits submitted by Kouretas do not, as a matter of law, demand a finding of the absence of an attorney-client relationship between Kouretas and plaintiffs, we must accept plaintiffs' contentions that such a professional relationship did exist. (*Nagel,* at pp. 45-46.)

In light of the above, we find plaintiffs' claims are not subject to the anti-SLAPP statute. Since Kouretas did not satisfy the threshold showing under section 425.16, we need not address plaintiffs' remaining contentions on appeal, including whether plaintiffs showed a probability of prevailing on their claims. (*ComputerXpress, Inc. v. Jackson, supra,* 93 Cal.App.4th at p. 1004.) Because we do not reach plaintiffs' remaining contentions, we deny plaintiffs' request for judicial notice of legislative materials relating to Corporations Code section 16307 as irrelevant.

### III

### *Attorney's Fees*

Since defendant did not show that plaintiffs' complaint arose out of protected petitioning activity under section 425.16, the attorney's fee award to Kouretas must be set aside. Pursuant to section 425.16, subdivision (c), plaintiffs are entitled to attorney's fees if Kouretas's anti-SLAPP motion was frivolous or was solely intended to cause unnecessary delay. Upon remand, the trial court shall determine whether plaintiffs are entitled to recover attorney's fees, including attorney's fees on appeal. (Evans v. Unkow

9

(1995) 38 Cal.App.4th 1490, 1499 ["A statute authorizing an attorney fee award at the trial court level includes appellate attorney fees unless the statute specifically provides otherwise"].)

DISPOSITION

The judgment and the orders (1) striking the complaint and (2) awarding attorney's fees to Kouretas are reversed.  The matter is remanded for a determination of whether plaintiffs are entitled to recover attorney's fees.  Plaintiffs are awarded their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1).)


       HULL       , J.


We concur:


     RAYE     , P. J.


     ROBIE     , J.