[No. B163416. Second Dist., Div. Four. Dec. 18, 2003.]

ROGER LEON JESPERSEN, et al., Plaintiffs and Appellants, v.
KAREN E. ZUBIATE-BEAUCHAMP, et al., Defendants and Appellants.

■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■

## COUNSEL

Parcells & Associates and Dayton B. Parcells III for Plaintiffs and Appellants.

Berman, Berman & Berman, William M. Aitken and James W. McCord for Defendant and Appellant Karen E. Zubiate-Beauchamp.

Daniel J. Doonan and D. Scott Doonan for Defendants and Appellants Daniel J. Doonan, Suzanne K. Shapiro and the Law Offices of Daniel J. Doonan, Inc.

## OPINION

**HASTINGS, J.**—Appellants, attorneys sued for litigation related malpractice, filed a special motion to strike pursuant to Code of Civil Procedure section 425.16. The trial court denied the motion, concluding that the malpractice action does not qualify for treatment under section 425.16, the so-called anti-SLAPP statute.[1] ■■■ We conclude the trial court did not err. The alleged malpractice did not arise out of the attorneys' First Amendment right to petition. Rather the malpractice alleged is appellants' negligent failure to protect their clients' rights in the underlying action.

### BACKGROUND

Respondents and cross-appellants, Roger Leon Jespersen and others, filed this action on May 2, 2002, against appellants and cross-respondents, attorneys Karen Zubiate-Beauchamp, Daniel Doonan, Suzanne Shapiro, and the Law Offices of Daniel J. Doonan.[2] The complaint alleges that respondents retained appellants to represent them in a civil lawsuit in which the respondents had been named as defendants, and that appellants did so negligently,

---

[1] See *Navellier v. Sletten* (2002) 29 Cal.4th 82, 85, footnote 1 [124 Cal.Rptr.2d 530, 52 P.3d 703]; Code of Civil Procedure section 425.16.

[2] To avoid confusion, we shall refer to the Jespersens as the respondents and to the attorneys as the appellants; or if we need to identify a particular appellant, we shall use his or her name.

resulting in a court order requiring respondents to provide verified responses to discovery requests without objecting to them.[3] It is further alleged that appellants' negligence resulted in a similar order six weeks later, along with sanctions, the denial of a motion for reconsideration filed by appellants on respondents' behalf, and finally, an order striking respondents' answer and cross-complaint, and entering their default.

Appellants Doonan and Shapiro brought a special motion to strike (a SLAPP motion[4]), and appellant Zubiate-Beauchamp joined in the motion. Respondents moved for sanctions on the ground that the motion was frivolous. On October 29, 2002, the trial court issued a written decision denying appellants' motion to strike and respondents' request for sanctions. Appellants filed timely notices of appeal, and respondents filed a timely notice of cross-appeal.

## DISCUSSION

### 1. *The SLAPP Motion*

Appellants contend that the trial court erred in denying their SLAPP motions.

"A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (Code Civ. Proc., § 425.16, subd. (b)(1).)[5]

On appeal from an order granting or denying a motion pursuant to section 425.16, the appellate court engages in a two-step process, determining first whether the defendant made a threshold showing that the challenged cause of action is one arising out of acts done in furtherance of the defendant's exercise of a right to petition or free speech under the United States or California Constitution in connection with a public issue, as defined in the statute; and if so, whether the plaintiff has demonstrated a probability of prevailing on the claim. (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 [124 Cal.Rptr.2d 507, 52 P.3d 685]; § 425.16, subd. (b)(1), (2).)

---

[3] Los Angeles Superior Court Case No. GC014536.

[4] See footnote 1.

[5] All further statutory references are to the Code of Civil Procedure, unless otherwise specified.

■ We independently determine whether a cause of action is based upon .activity protected under the statute. (*Governor Gray Davis Com. v. American Taxpayers Alliance* (2002) 102 Cal.App.4th 449, 456 [125 Cal.Rptr.2d 534].) In doing so, we consider "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2); *Equilon Enterprises v. Consumer Cause, Inc., supra,* 29 Cal.4th at p. 67.)

Doonan and Shapiro contend that legal representation is constitutionally protected conduct within the purview of subdivision (e) section 425.16, and that a special motion to strike may be brought by an attorney who has been named in a malpractice action. Zubiate-Beauchamp contends that in this case, the protected conduct or speech was the filing of attorney declarations in support of a motion brought pursuant to section 473.

Appellants base their contentions on section 425.16, subdivision (e), which provides that an " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a . . . judicial proceeding . . . ; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body . . . ; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue."

Appellants point out that litigation is a public issue, and filing a lawsuit is conduct in furtherance of the exercise of the constitutional right of petition. (See *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115, 1122 [81 Cal.Rptr.2d 471, 969 P.2d 564].) Therefore, they also point out, a malicious prosecution action may be the subject of a special motion to strike under section 425.16. (See *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 741 [3 Cal.Rptr.3d 636, 74 P.3d 737].) Appellants also rely upon *Dowling v. Zimmerman* (2001) 85 Cal.App.4th 1400 [103 Cal.Rptr.2d 174], where an attorney's negotiation on behalf of her clients was held to have been an act in furtherance of protected speech or petition, justifying a special motion to strike a defamation complaint. (See *id.* at p. 1418.)

■ Thus, appellants have shown, and we agree, that an attorney who has been made a defendant in a lawsuit based upon a written or oral statement he or she made on behalf of clients in a judicial proceeding or in connection with an issue under review by a court, may have standing to bring a SLAPP motion. (See *Briggs v. Eden Council for Hope & Opportunity, supra,* 19 Cal.4th at p. 1116.)

■ It does not follow, however, that a legal malpractice action may be subject to a SLAPP motion merely because it shares some similarities with a malicious prosecution action and involves attorneys and court proceedings. "[T]he mere fact an action was filed after protected activity took place does not mean it arose from that activity." (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 76–77 [124 Cal.Rptr.2d 519, 52 P.3d 695].) And a moving defendant's burden to show a " 'cause of action . . . arising from' " is not met simply by showing that the *label* of the lawsuit appears to involve the rights of free speech or petition; he or she must demonstrate that the *substance* of the plaintiff's cause of action was an act in furtherance of the right of petition or free speech. (*Id.* at p. 78.)

Respondents' malpractice action is not based upon appellants' having filed an answer or cross-complaint in the action in which appellants represented respondents. It is not, as appellants contend, based upon appellants' having filed declarations, motions, or other papers in that action, or upon appellants' appearance on discovery or other motions. Appellants' characterization of such activity as the basis for respondents' cause of action depends solely upon their narrow construction of the complaint, while ignoring other facts in the record that show what conduct underlies respondents' cause of action.

Granted, the complaint is not a model pleading. It describes appellants' negligent conduct by improper inferential pleading that could subject it to a special demurrer and amendment. (See 4 Witkin, Cal. Proc. (4th ed. 1997) Pleading, § 356 , p. 456.) For example, the allegation that the court ordered responses to discovery requests without objections merely implies that objections had been waived by appellants' failure to serve timely responses. (See § 2031, subd. (*l*).) And the allegation that appellants' negligence resulted in a similar order six weeks later, along with sanctions, implies that appellants again failed to supply responses without objections.

■ We need not, however, wear the blinders that appellants have fashioned for us. To determine whether appellants' burden has been met, we consider not only the pleadings, but also " 'supporting and opposing affidavits stating the facts upon which the liability or defense is based.' (§ 425.16, subd. (b).)" (*City of Cotati v. Cashman, supra,* 29 Cal.4th at p. 79.)

The parties' declarations and exhibits reveal the facts that are implied in the complaint. In opposition to appellants' SLAPP motion, respondents submitted excerpts from the discovery proceedings in the underlying action that gave rise to respondents' claims of malpractice here, including appellants' opposition to a motion for terminating sanctions, submitted on behalf of respondents, and minute orders relevant to those proceedings. In that opposition, appellants represented to the court that after opposing counsel had

served them with a request for production of documents, they sent opposing counsel a letter requesting an extension of time to respond, but received no reply until after the deadline to serve a response, and that in that reply, opposing counsel conditioned any extension upon a waiver of objections.

Of course, any objections had already been waived by that time by appellants, since they had failed to serve a timely response. (See § 2031, subd. (*l*).) Nevertheless, opposing counsel's condition was unacceptable to appellants. Appellants served a response on January 12, 2001, as well as a supplemental set of documents on January 23, 2001, and on January 31, 2001, opposing counsel obtained a court order directing respondents to serve a response without objections (suggesting that the response served by appellants had contained objections in spite of the waiver).

The record also includes several minute orders entered in the underlying action. The order of March 14, 2001, recites that the court found that respondents had willfully failed to comply with the order of January 31, 2001, and that they were "to provide new responses and produce documents, under oath, without objection and without a prologue, separately and fully by 3-22-01." Sanctions in the sum of $1800 were imposed jointly and severally upon respondents and their attorneys, the appellants.

On April 18, 2001, the court denied a motion to reconsider its sanctions award, and imposed a terminating sanction against respondents (suggesting a finding that they had failed to comply with the orders of Jan. 31, 2001, and March 14, 2001). Respondents' answer and cross-complaint were stricken, and their default entered. Judgment of quiet title was entered in favor of the plaintiffs.

From such facts, we discern that appellants' conduct allegedly consisted of: (1) a *failure* to serve timely discovery responses, resulting in a waiver of objections pursuant to section 2031, subdivision (*l*); (2) a *failure* to comply with a court order to serve responses without objections; and (3) a *failure* to comply with a second court order. Thus, it appears that the alleged attorney malpractice did not consist of any act in furtherance of anyone's right of petition or free speech, but appellants' negligent *failure* to do so on behalf of their clients.

Nevertheless, Zubiate-Beauchamp contends that the *evidence* of appellants' conduct, a declaration she filed in the underlying action, is the protected free speech or petition from which respondents' cause of action arises. Although Zubiate-Beauchamp's logic escapes us, it is apparently based upon the fact that such evidence was a written statement filed in a judicial proceeding. (See § 425.16, subd. (e).) The declaration was filed in support of a motion

submitted by appellants on behalf of respondents pursuant to section 473 to set aside the default. In it, Zubiate-Beauchamp essentially admitted that she continued to apply her own interpretation to the discovery request, although it was at odds with opposing counsel's and the court's, and that in order to protect her clients' privacy, she continued to refuse to produce certain financial documents. Thus, she admitted having effectively interposed an objection (privacy) in direct conflict with the court's order.[6]

Plainly, respondents' cause of action is not based on Zubiate-Beauchamp's declaration or any of appellants' declarations. Appellants have not been sued for having negligently filed declarations admitting their malpractice, but for their failure to comply with a discovery statute and two court orders to do so. Appellants have failed to demonstrate that such conduct amounts to constitutionally protected speech or petition, and we reject their attempt to turn garden-variety attorney malpractice into a constitutional right. Thus, we need not consider whether respondents demonstrated a probability of prevailing on the claim. (See *Equilon Enterprises v. Consumer Cause, Inc., supra,* 29 Cal.4th at p. 67; § 425.16, subd. (b)(1), (2).)

### 2. *The Denial of Sanctions*

In their cross-appeal, respondents contend that the trial court abused its discretion in denying their request for attorney fees pursuant to section 425.16, subdivision (c), which provides in part: "If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to Section 128.5."

Respondents claim that the trial court found that appellants' motion was frivolous, and should be ordered to impose sanctions in conformity with that finding. We have reviewed the reporter's transcript, and it contains no findings or ruling at the time of the hearing on the SLAPP motion, although at the outset of the hearing, the court announced that its *tentative* ruling was to deny appellants' motion and to assess sanctions against appellants.

---

[6] Zubiate-Beauchamp insists that the declarations filed in support of the section 473 motion do not contain admissions of wrongdoing; and relying upon *Smith v. Lewis* (1975) 13 Cal.3d 349, 364–365 [118 Cal.Rptr. 621, 530 P.2d 589], overruled on another point in *In re Marriage of Brown* (1976) 15 Cal.3d 838, 851, footnote 14 [126 Cal.Rptr. 633, 544 P.2d 561], she also contends that attorney declarations are inadmissible as admissions of malpractice. We do not reach the issue of the ultimate admissibility of appellants' declarations, since we find that appellants did not meet their initial burden as the moving parties, and the burden to show a probability of prevailing never fell to respondents. We refer to the declarations and the admissions that appear to be stated in them only to determine upon what alleged conduct respondents base their cause of action.

Respondents point to the court's comments at the hearing. After some argument, counsel for Zubiate-Beauchamp said to the court, "What I'm saying is that to the extent there is a component of frivolousness in Your Honor's analysis, this was a serious—" The judge interrupted with the following ambiguous statement, "Frivolousness is not my analysis, at least not my—not by my concession. You may think so. In my view the frivolousness was in bringing the lawsuit, bringing the motion." There was then some additional argument, and the court took the matter under submission.

■ We need not attempt to understand the court's statement, since a judge's comments in oral argument may never be used to impeach the final order, however valuable to illustrate the court's theory they might be under some circumstances. (*In re Marriage of Ditto* (1988) 206 Cal.App.3d 643, 647–648 [253 Cal.Rptr. 770].)

■ Apparently the trial court did not find appellants' motion to be frivolous, whatever its initial impression may have been. Courts are not bound by their tentative rulings. (*In re Marriage of Hafferkamp* (1998) 61 Cal.App.4th 789, 794 [71 Cal.Rptr.2d 761].)

Respondents also contend that the trial court's refusal to award sanctions should be reversed on the ground that appellants' motion was frivolous. The motion was frivolous, respondents assert, for the reasons stated in that portion of their brief where they argue that they have established a probability that they will prevail in their malpractice action. Respondents' theory would require the imposition of sanctions against the moving defendant in every SLAPP motion that was denied because the plaintiff managed to establish a probability of prevailing.

Sanctions, however, must be grounded upon something more. "[T]he reference to section 128.5 in section 425.16, subdivision (c) means a court must use the procedures and apply the substantive standards of section 128.5 in deciding whether to award attorney fees under the anti-SLAPP statute." (*Decker v. U.D. Registry, Inc.* (2003) 105 Cal.App.4th 1382, 1392 [129 Cal.Rptr.2d 892].) "[T]o impose sanctions under section 128.5, there must be a showing the action or tactic was meritless or frivolous *and* that it was pursued in bad faith, and whether the action is taken in bad faith must be judged by a subjective standard. [Citations.] While the trial court may infer subjective bad faith from the pursuit of a frivolous tactic [citation], 'it is within a court's discretion not to draw that inference if convinced the party was acting in the good faith belief the action was meritorious.' [Citation.]" (*Shelton v. Rancho Mortgage & Investment Corp.* (2002) 94 Cal.App.4th 1337, 1346 [115 Cal.Rptr.2d 82].)

■ Since the trial court summarily denied sanctions, and gave no explanation in its order, "we must presume the court either found the [motion] was not totally without merit or was not prosecuted in bad faith or for an improper motive, or any combination of these factors. [Citation.]" (*Dolan v. Buena Engineers, Inc.* (1994) 24 Cal.App.4th 1500, 1504 [29 Cal.Rptr.2d 903].) Respondents' argument merely urges a different opinion, which is an insufficient ground, without more, to find an abuse of discretion. (*Shelton v. Rancho Mortgage & Investment Corp.*, *supra*, 94 Cal.App.4th at p. 1345.)

## DISPOSITION

The order denying appellants' special motion to strike is affirmed. The order denying sanctions is affirmed. Respondents shall have their costs on appeal.

Vogel (C. S.), P. J., and Epstein, J., concurred.

The petition of defendants and appellants for review by the Supreme Court was denied April 14, 2004.