Filed 9/2/15  OptimisCorp v. Zilberman CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| OPTIMIS*CORP*,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>LEONID ZILBERMAN et al.,<br><br>    Defendants and Appellants. | B256442<br><br>(Los Angeles County<br>Super. Ct. No. SC121529) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard A. Stone, Judge.  Affirmed.

Ogloza Fortney, Darius Ogloza, David Fortney and Brian D. Berry for Plaintiff and Appellant.

Robie & Matthai, Edith R. Matthai and Kyle Kveton for Defendants and Appellants Leonid Zilberman and Wilson Turner Kosmo LLP.

Van Vleck Turner & Zaller, Daniel J. Turner, and Damion D. D. Robinson for Defendant and Appellant Laura Brys.

\* \* \* \* \* \*

A SLAPP suit is "a meritless suit filed primarily to chill the defendant's exercise of First Amendment rights." (*Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 815, fn. 2, disapproved of on other grounds in *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 68, fn. 5.) In response to SLAPP suits, the Legislature enacted Code of Civil Procedure section 425.16,[1] known as the anti-SLAPP statute, which permits early dismissal of SLAPP suits. Section 425.16 provides in pertinent part: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

The test for analyzing an anti-SLAPP motion is well established. "In ruling on an anti-SLAPP motion, the trial court conducts a two-part analysis: The moving party bears the initial burden of establishing a prima facie case that the plaintiff's cause of action arises from the defendant's free speech or petition activity, as defined in the anti-SLAPP statute. [Citations.] If the moving party meets its burden, the burden shifts to the plaintiff to establish a probability that he or she will prevail on the merits." (*Anderson v. Geist* (2015) 236 Cal.App.4th 79, 84.) The second step is necessary only if the defendant satisfies its burden on the first step. (*Id*. at p. 85.)

In the context of a claim for legal malpractice, there is no categorical bar to the anti-SLAPP statute. (*Fremont Reorganizing Corp. v. Faigin* (2011) 198 Cal.App.4th 1153, 1170 (*Fremont Reorganizing*).) But, the anti-SLAPP statute does not apply when the gravamen of the lawsuit does not concern a statement made in connection with litigation but instead concerns the breach of a professional duty. (*Ibid*.) In this lawsuit alleging legal malpractice and breach of attorneys' fiduciary duties, the trial court concluded that the principal thrust was the breach of professional duties, and we agree.

---

[1]     All further undesignated statutory references are to the Code of Civil Procedure.

We therefore affirm the order denying defendants' anti-SLAPP motions. We also affirm the denial of attorney fees Optimis*Corp* incurred in opposing the anti-SLAPP motions.

## BACKGROUND

Plaintiff and appellant Optimis*Corp* is a privately held Delaware corporation founded by Alan Morelli, who served as its chief executive officer (CEO). Defendant and appellant Laura Brys was Optimis*Corp*'s general counsel from April 2012 to January 2013. Defendant and appellant Leonid Zilberman was appointed by Optimis*Corp*'s insurance carrier to represent Optimis*Corp* after Tina Geller, an Optimis*Corp* employee, reported Morelli had sexually harassed her. Zilberman was employed by defendant and appellant Wilson Turner Kosmo LLP (Wilson).

Zilberman hired independent investigator Nancy Solomon to investigate Geller's sexual harassment allegations. Solomon's investigation revealed that Morelli admitted he engaged in sexual activity with Geller but disputed the allegations that he initiated the sexual activity and that he harassed her.[2] Solomon concluded that "Mr. Morelli was not credible in his explanation that Ms. Geller was a sexually aggressive person who pressured him to have sexual relations and that on occasion he succumbed to such pressure. As an initial matter, Ms. Solomon did not find [it] inherently plausible that the CEO could not take action to stop sexual behavior towards him that he found to be objectionable, particularly given the fact that it occurred multiple times, that he had to take willful action to stimulate her sexually, and that he received very intimate sexual touching which required on some level his active participation." Solomon further concluded that Morelli engaged in other inappropriate behavior in the workplace.

---

[2] Geller ultimately filed a lawsuit alleging that Morelli forced her to engage in sexual activity. In Optimis*Corp*'s opposition to the anti-SLAPP motions, Geller filed a declaration recanting some of her prior allegations. Zilberman and Wilson seek judicial notice of Delaware proceedings in which Geller gave testimony consistent with her prior allegations. We deny the request for judicial notice because the testimony is not relevant to determining whether the anti-SLAPP statute applies to the claims alleged in the first amended complaint, the only issue considered in this appeal.

3

During the course of the investigation, Morelli claimed Solomon rushed to complete her report in advance of a specially called board meeting. He informed Solomon of his concern and she "assured him that she did not feel rushed." She provided a declaration stating that she "assured Mr. Morelli that [she] did not feel rushed by anyone" and "never told Mr. Morelli that [she] did not have sufficient time to complete [her] investigation or complete [her] report." Morelli told Brys he was concerned that the investigation was rushed, and Brys inquired and learned that Solomon did not require additional time.

Following Solomon's investigation, at a specially called board meeting, Zilberman advised the board to terminate Morelli, and it did. Subsequently, a Delaware court recognized Morelli as the CEO. Morelli then terminated some of the board members who had voted to terminate him and replaced them with new board members.

OptimisCorp's first amended complaint (complaint) alleged causes of action for legal malpractice and breach of fiduciary duty. OptimisCorp alleged a conspiracy among Zilberman, Brys and a group of stockholders to oust Morelli and alleged that the stockholders "co-opted" Brys and Zilberman. According to the complaint, Zilberman and Brys knew Solomon's independent investigation had not been completed. Both failed to supervise the independent investigation based on the applicable standard of care. Both were aware a board meeting had been improperly called but did not prevent it. Zilberman gave negligent legal advice at the board meeting. Specifically, he advised board members to terminate Morelli and informed them if they did not the company would lose its insurance coverage. Zilberman had a conflict of interest with the insurance carrier, which paid for the representation of OptimisCorp. Zilberman did not reveal the full extent of settlement demands from Geller's counsel to OptimisCorp. Even after Morelli was reinstated as CEO, both Brys and Zilberman attempted to "strip him of any powers of direction or supervision." (Defendants vigorously dispute these allegations but their merits-based arguments are not relevant to the first step in the anti-SLAPP analysis. (*Freeman v. Schack* (2007) 154 Cal.App.4th 719, 733.))

4

Brys, Zilberman, and Wilson filed anti-SLAPP motions, arguing that the lawsuit should be dismissed. The trial court denied the motions and denied Optimis*Corp*'s request for attorney fees. It denied attorney fees because it concluded the motions were not filed in bad faith.

Zilberman, Wilson and Brys appealed the denial of their anti-SLAPP motions. Optimis*Corp* cross-appealed, challenging the denial of its request for attorney fees.

## DISCUSSION

"'Review of an order granting or denying a motion to strike under section 425.16 is de novo. [Citation.] We consider "the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based." [Citation.] However, we neither "weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law."'" (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325-326.)

"A special motion to strike is a procedural remedy to dispose of lawsuits brought to chill the valid exercise of a party's constitutional right of petition or free speech. [Citation.] The purpose of the anti-SLAPP statute is to encourage participation in matters of public significance and prevent meritless litigation designed to chill the exercise of First Amendment rights. (§ 425.16, subd. (a).) The Legislature has declared that the statute must be 'construed broadly' to that end." (*Fremont Reorganizing, supra*, 198 Cal.App.4th at p. 1165.) The anti-SLAPP statute may apply to prelitigation conduct. (*People ex rel. Fire Ins. Exchange v. Anapol* (2012) 211 Cal.App.4th 809, 824.)

To determine whether a cause of action arises from an act in furtherance of the defendant's constitutional right of petition or free speech we look to the gravamen of the claim. (*Tuszynska v. Cunningham* (2011) 199 Cal.App.4th 257, 267.) "Moreover, that a cause of action arguably may have been 'triggered' by protected activity does not entail that it is one arising from such. [Citation.] In the anti-SLAPP context, the critical consideration is whether the cause of action is *based on* the defendant's protected free

5

speech or petitioning activity." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 (*Navellier*).)

Courts applying these principles in the context of legal malpractice lawsuits uniformly have held that the anti-SLAPP statute does not apply to "garden variety" malpractice claims. (*Chodos v. Cole* (2012) 210 Cal.App.4th 692, 702-703 [collecting cases].) "A malpractice claim focusing on an attorney's incompetent handling of a previous lawsuit does not have the chilling effect on advocacy found in malicious prosecution, libel, and other claims typically covered by the anti-SLAPP statute. In a malpractice suit, the client is not suing because the attorney petitioned on his or her behalf, but because the attorney did not competently represent the client's interests while doing so. Instead of chilling the petitioning activity, the threat of malpractice encourages the attorney to petition competently and zealously. This is vastly different from a third party suing an attorney for petitioning activity, which clearly could have a chilling effect." (*Kolar v. Donahue, McIntosh & Hammerton* (2006) 145 Cal.App.4th 1532, 1540 (*Kolar*).) A lawsuit *based on* an attorney's breach of professional duties is not a SLAPP suit even if they occur in the context of litigation and even if "protected speech and petitioning are part of the 'evidentiary landscape' within which the action arose." (*Castleman v. Sagaser* (2013) 216 Cal.App.4th 481, 491, 494.)

For example, recently in *Loanvest I, LLC v. Utrecht* (2015) 235 Cal.App.4th 496 (*Loanvest*), the plaintiff company sued its former attorneys for malpractice for allegedly disregarding the interest of the company to protect the interest of the person who formerly controlled the company. (*Id*. at p. 499.) The court explained the relevant principles in the context of a malpractice lawsuit: the anti-SLAPP statute requires distinguishing between cases involving clients' causes of actions against attorneys based on attorneys' conduct on behalf of the plaintiff clients, clients' causes of action against attorneys based on conduct related to other clients and nonclients' causes of action against attorneys. (*Id*. at pp. 502-503.) The anti-SLAPP statute does not apply to the first group because "'it is unreasonable to interpret th[e statutory] language to include a client's causes of action against the client's own attorney arising from litigation-related

6

activities undertaken for that client.'" (*Id.* at p. 503, quoting *PrediWave Corp. v. Simpson Thacher & Bartlett* LLP (2009) 179 Cal.App.4th 1204, 1227.) A legal malpractice action by a former client, "claiming that the attorney breached fiduciary obligations to the client as the result of a conflict of interest or other deficiency in the representation of the client, the action does not threaten to chill the exercise of protected rights and the first prong of the anti-SLAPP analysis is not satisfied." (*Loanvest*, at p. 504.)

The allegations here are similar to those in *Loanvest*, i.e. that Zilberman and Brys breached their duties to the corporation Optimis*Corp*. Optimis*Corp* alleged that Brys and Zilberman breached their duties in overseeing Solomon's investigation, advising Optimis*Corp*, and advising the board. (The latter concerned only Zilberman.) The allegations are related to the anticipated litigation in the context of the advice given to Optimis*Corp*. The gravamen of the causes of action was not defendants' exercise of their right of petition or speech but their alleged failure to properly advise Optimis*Corp* and its board. (See *Hylton v. Frank E. Rogozienski, Inc.* (2009) 177 Cal.App.4th 1264, 1272, 1274 [concluding that "[a]lthough petitioning activity is part of the evidentiary landscape" the gravamen of the plaintiff's claim was that the attorney provided advice inconsistent with his fiduciary obligations]; see also *Navellier, supra*, 29 Cal.4th at p. 92 ["The anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability— and whether that activity constitutes protected speech or petitioning."].) That anti-SLAPP statute therefore does not apply. (*Castleman v. Sagaser, supra*, 216 Cal.App.4th at pp. 491, 494; see *Freeman v. Schack, supra*, 154 Cal.App.4th at p. 732.)

The numerous cases relied upon by defendants that do not involve lawsuits by former clients against their attorneys are not helpful in determining whether this lawsuit is based on attorneys' breach of their fiduciary duties or on their engagement in petitioning activity. Although *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658 arguably included claims by a former client against its attorneys, the *Peregrine* court did not consider the distinction between a client and nonclient plaintiff and therefore is not persuasive authority in support of defendants'

7

argument that the anti-SLAPP statute applies to this case. *Fremont Reorganizing, supra*, 198 Cal.App.4th 1153 is not analogous to this case because there the defendant attorney was "not acting on behalf" of the former client when he made challenged statements to an insurance commissioner. (*Id*. at p. 1171.) While *Jespersen v. Zubiate-Beauchamp* (2003) 114 Cal.App.4th 624, 631-632, suggests that a legal malpractice lawsuit involving petitioning activity could be subject to the anti-SLAPP statute, its dicta has been rejected (*Kolar, supra*, 145 Cal.App.4th at p. 1539), and its holding that the anti-SLAPP statute did not apply to a legal malpractice claim does not assist defendants.

Finally, turning to Optimis*Corp*'s cross-appeal, the trial court did not abuse its discretion in concluding that Optimis*Corp* was not entitled to attorney fees under section 425.16, subdivision(c)(1), which permits fees if a special motion to strike is frivolous or solely intended to cause unnecessary delay. (See *Jespersen v. Zubiate-Beauchamp, supra*, 114 Cal.App.4th at p. 634 [applying abuse of discretion standard].) Defendants' arguments in the trial court and in this court were not frivolous. They cited authority arguably supporting their position even though we have found it unpersuasive. The anti-SLAPP motions were not totally without merit, and there is no evidence that they were brought for an improper purpose. We therefore reject Optimis*Corp*'s cross-appeal and affirm the trial court's denial of Optimis*Corp*'s request for its attorney fees in defending the anti-SLAPP motions.

## DISPOSITION

The order denying defendants' anti-SLAPP motions is affirmed. The denial of attorney fees to Optimis*Corp* also is affirmed. Each party shall bear his, her, or its own costs on appeal.


FLIER, J.

WE CONCUR:



RUBIN, Acting P. J.              GRIMES, J.

8