Filed 1/23/25  Helix Media v. Clark CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| HELIX MEDIA LLC,<br><br>    Plaintiff,<br><br>  v.<br><br>NATALIE CLARK et al.,<br><br>    Defendants,<br><br>ROBERT JAMES WINKLER,<br><br>    Objector and Appellant. | B332861<br><br>(Los Angeles County Super. Ct. No. 21GDCV00658) |

    APPEAL from an order of the Superior Court of Los Angeles County, William Crowfoot, Judge. Affirmed.

    Marshall Law and Daniel E. Marshall for Appellant Robert James Winkler.

    No appearance for Plaintiff and Respondent Helix Media LLC.

## INTRODUCTION

Helix Media LLC (Helix) sued Natalie Clark (Clark), Freya Holdings LLC (Freya), and 41 limited liability companies for 25 causes of action sounding in both contract and tort. Clark and Freya moved to strike several causes of action in the operative complaint under Code of Civil Procedure section 425.16, the anti-SLAPP statute.[1] The trial court (Hon. Ralph C. Hofer) denied the motion, and this court affirmed the denial order. (*Helix Media LLC v. Natalie Clark, et al.* (Nov. 17, 2022, B315990) [nonpub. opn.] (*Helix I*).)

The trial court (Hon. William Crowfoot) subsequently granted Helix's motion for attorneys' fees against Clark, Freya, and their attorneys of record, for filing a frivolous anti-SLAPP motion. (§ 425.16, subd. (c)(1).) In this appeal, Robert Winkler (Winkler), Clark and Freya's attorney of record in the proceedings below, contends the trial court erred by granting the attorneys' fee motion because: (1) the trial court granted the motion without a finding of subjective bad faith; (2) the order did not adequately describe the conduct warranting sanctions; (3) the anti-SLAPP motion was not frivolous; and (4) the trial court improperly awarded fees incurred on appeal. For the reasons discussed below, we reject these contentions and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

We set forth the factual and procedural background as outlined by *Helix I*.

---

1    SLAPP is the acronym for strategic lawsuit against public participation. All further undesignated statutory references are to the Code of Civil Procedure.

"The first amended complaint (FAC) alleges the following facts. Helix is a consulting company that helps individuals create passive income through the creation of e-commerce businesses (LLCs) that sell health supplements and skin care products. Once each LLC is established, Helix leverages its connections with manufacturers, payment processing companies, and its own expertise to run each e-commerce business itself. Through this model, each LLC owner earns several thousand dollars of passive income per year.

"As part of its work for each LLC, Helix is given access to the LLCs' operating bank accounts. Each LLC sets up a reserve account held by various payment processing companies who administer the e-commerce financial transactions. The reserve accounts hold back a small percentage of income generated by the business as insurance for the processing company in the event the business has an inordinately high number of returns or chargebacks. Under the agreements entered into between Helix and each of the LLCs, Helix is entitled to 99 percent of the net profits, and each LLC owner is entitled to the remaining 1 percent.

"This business model is based on policies enacted by payment processing companies, which only allow a limited number of payments to be processed by each LLC per year. By operating dozens of LLCs, Helix has managed to leverage economies of scale while still remaining within the processing companies' policies—a business model that the processing companies are fully aware of and encourage by working directly with Helix on behalf of all of its LLC clients.

"In 2018, Helix engaged Clark to help identify and recruit individuals interested in the business model. As an independent

contractor, Clark's role was that of an outside lead generator, salesperson, and recruiter. She was to identify interested individuals, explain the business model, and have them execute the necessary agreements. Between 2018 and 2021, Clark recruited over 20 individuals who created approximately 44 LLCs (the Merchant LLCs). Clark was compensated based on her success. Between August 2018 and January 2021, Helix paid Clark a total of $114,718.22.

"The FAC further alleges that, because she was not satisfied with the money she earned, Clark decided to steal the entire business. In late January and early February 2021, Clark stole login credentials for each of the Merchant LLC's bank accounts; unlawfully accessed those bank accounts and changed the passwords to the online accounts, eliminating Helix's access to the accounts; transferred approximately $460,000 from the Merchant LLC bank accounts into Freya's bank account—an entity Clark formed on January 27, 2021, which she owned, managed and controlled; and stole from Helix all the agreements executed by the LLCs since 2019 and/or failed to have the LLC owners sign the agreements in the first instance.

"As part of her scheme, the FAC alleges that on January 28, 2021, Clark sent an email to the Merchant LLCs (the January 28 email). The email accused Helix of the following: that Helix materially breached its agreements with the LLCs by not paying each of the LLC owners his or her full 1 percent commission; that Helix was put on notice of these alleged breaches several months ago; and that Helix refused to remedy the breaches. The email went on to state that Clark transferred 'the funds held in the merchant accounts into a trust account while the impeding [*sic*] litigation ensues.' In the same email, Clark then offered to

4

purchase each LLC and claimed that this purchase would allow each LLC owner to 'be entirely and immediately absolved of the foregoing legal matters.'

"After receiving the January 28 email, a majority of the Merchant LLCs (41 total) refused to respond to Helix's inquires, refused to cooperate, and refused to instruct Clark to return the funds.

"Based on these allegations, Helix sued Clark, Freya, and 41 of the Merchant LLCs for 25 causes of action sounding in both contract and tort. Helix subsequently filed the FAC on July 1, 2021." (*Helix I, supra*, B315990 [nonpub. opn.].)

"Clark moved to strike the following causes of action in the FAC under the anti-SLAPP statute: breach of oral contract (sixth cause of action); breach of the implied-in-fact contract (seventh cause of action); breach of the implied covenant of good faith and fair dealing (eighth cause of action); intentional interference with contractual relations (eleventh cause of action); libel per se (twelfth cause of action); trade libel (thirteenth cause of action); defamation (fourteenth cause of action); conversion (sixteenth cause of action); breach of fiduciary duty (twenty-second cause of action); and unfair competition under California Business and Professions Code section 17200 (twenty-third cause of action). She contended those causes of action should be stricken from the FAC because the January 28 email was a communication in 'anticipation of litigation' and thus, she argued, it is protected under both the anti-SLAPP statute (specifically, section 425.16, subdivision (e)(2)) and the litigation privilege (Civ. Code § 47, subd. (b)).

"In opposition, Helix argued the January 28 email was not written in anticipation of litigation because 'no litigation was

5

seriously contemplated at the time . . . Clark sent the January 28 . . . email.' Alternatively, Helix claimed that even if the January 28 email constitutes protected activity, it was Clark's alleged actions (i.e., stealing passwords to the Merchant LLC's bank accounts, removing Helix's access to those accounts, and transferring money out of those accounts into an account she controlled) that form the basis of Helix's claims against Clark, not the January 28 email. And, even if the January 28 email constituted protected activity, Helix argued it demonstrated a probability of prevailing on its claims.

"After a hearing on the special motion to strike, the trial court [Hon. Ralph C. Hofer] denied the motion. The trial court held Clark 'failed to meet [her] burden under the circumstances of establishing that there was at the time of the [January 28 email] any pending litigation or that at the time litigation was or could have been seriously contemplated. [Helix] did not yet know about any of the circumstances indicated in the [January 28 email] and [Clark] . . . failed to show that [she] intended at that point to pursue litigation [herself], or that such was or could have been contemplated in good faith. . . . [I]t is defendant's burden to establish those essential matters, and the motion fails to do so. The reply does not offer to provide further evidence on this issue.' The trial court therefore denied the motion, concluding: '[T]he [m]otion is based on an argument that the [January 28 email] was a communication made in anticipation of litigation but has failed to sufficiently establish that there was at the time of the communication litigation which was seriously contemplated to be pursued or was contemplated in good faith.'" (*Helix I, supra*, B315990 [nonpub. opn., fn. omitted].)

6

Helix then moved for attorneys' fees and costs under section 425.16, subdivision (c)(1) against Clark, Freya, and their attorneys of record. Helix argued the anti-SLAPP motion was frivolous because Clark "and her counsel knew all along that the January 28, 2021 [e]mail was not sent in anticipation of litigation" and the motion was solely intended to cause unnecessary delay.

A few days later, Clark and Freya appealed the trial court's order denying their anti-SLAPP motion. The trial court stayed the action pending appeal. As previously noted, a different panel of this court affirmed the trial court's order denying Clark and Freya's anti-SLAPP motion, concluding Clark failed to meet her burden of demonstrating she engaged in protected activity. That opinion issued on November 17, 2022. (*Helix I, supra*, B315990 [nonpub. opn.].)

On January 19, 2023, the remittitur issued. The trial court (Hon. William A. Crowfoot) subsequently lifted the stay and set the hearing on Helix's attorneys' fee motion. After a hearing, the trial court issued a written ruling granting Helix's motion on the ground the anti-SLAPP motion was frivolous, and awarded attorneys' fees and costs in the reduced amount of $81,193.45 against Clark, Freya, Winkler, and Gabriel Vadasz (a former attorney of record).[2] Winkler appeals from the order.

---

2    Vadasz filed a motion to vacate the attorneys' fees order against him. The court granted his motion on grounds not relevant here, including that Vadasz reasonably believed he was no longer considered counsel of record, and he had no involvement in the frivolous anti-SLAPP motion.

## DISCUSSION

### A. Applicable Law and Standard of Review

"A trial court is required to award costs and attorney fees to a plaintiff who prevails in defending against an anti-SLAPP motion 'pursuant to [s]ection 128.5' upon a finding that the motion was 'frivolous or . . . solely intended to cause unnecessary delay.' (§ 425.16, subd. (c)(1).)" (*Rudisill v. California Coastal Com.* (2019) 35 Cal.App.5th 1062, 1070 (*Rudisill*).) "The reference to section 128.5 means that "'a court must use the procedures and apply the substantive standards of section 128.5 in deciding whether to award attorney fees under the anti-SLAPP statute.'"" (*Rudisill, supra*, 35 Cal.App.5th at p. 1070.)

"'[T]o impose sanctions under section 128.5, there must be a showing the action or tactic was meritless or frivolous *and* that it was pursued in bad faith, and whether the action is taken in bad faith must be judged by a subjective standard.'" (*Jespersen v. Zubiate-Beauchamp* (2003) 114 Cal.App.4th 624, 633, original italics (*Jespersen*).) A trial court may infer subjective bad faith from the pursuit of a frivolous tactic. (*Ibid*.) "'Frivolous in this context means that any reasonable attorney would agree the motion was totally devoid of merit.'" (*L.A. Taxi Cooperative, Inc. v. The Independent Taxi Owners Assn. of Los Angeles* (2015) 239 Cal.App.4th 918, 932 (*L.A. Taxi Cooperative*).)

"'An order awarding attorneys' fees pursuant to section 128.5, as incorporated in section 425.16, subdivision (c), is reviewed under the abuse of discretion test. [Citation.] A ruling amounts to an abuse of discretion when it exceeds the bounds of reason, and the burden is on the party complaining to establish that discretion was abused.'" (*Alfaro v. Waterhouse Management Corp.* (2022) 82 Cal.App.5th 26, 36-37 (*Alfaro*).)

8

## B.    Analysis

Winkler contends the trial court erred by awarding attorneys' fees under section 425.16, subdivision (c)(1) without finding the motion was filed in bad faith. But as explained below, this argument ignores the doctrine of implied findings.

"'A judgment or order of the lower court is presumed correct. All intendments and presumptions are indulged to support it on matters as to which the record is silent . . . .'" (*Denhman v. Superior Court* (1970) 2 Cal.3d 557, 564, italics omitted.) "Thus, in the absence of contrary findings, 'we must presume in favor of the judgment every finding of fact necessary to support it [that is] warranted by the evidence.'" (*Summers v. City of Cathedral City* (1990) 225 Cal.App.3d 1047, 1070-1071, fn. 19 (*Summers*).) "Accordingly, were a trial court to expressly find that an action was frivolous, as this one did, and then impose sanctions on the plaintiff, we would interpret the imposition of sanctions as an implied finding that the action was also brought in bad faith." (*Id*. at p. 1071, fn. 19)

Here, the trial court expressly concluded that the anti-SLAPP motion was frivolous. The court noted in its order that "Clark and Freya Holdings cited primarily to one case in their Anti-SLAPP Motion to show that the January 28 [e]mail is protected activity . . . . The Court also notes that the [C]ourt of [A]ppeal, in affirming Judge Hofer's denial of the Anti-SLAPP Motion, thoroughly distinguished the facts in [that case]." The trial court further explained: "In opposition to this motion, Clark belatedly declares that she 'became aware' that Helix was paying the Merchants less than the amount due under the reseller agreements and that she informed Kim Ng [Helix's CEO] 'via Skype and email' that she 'was aware of this situation, [*sic*] and

9

demanded that he correct it.' [Citation.] She also declares that at the time she sent the January 28 [e]mail, 'it was evident that [a lawsuit] was going to be filed – if not by Helix, then by [herself] to protect the interests of each LLC against any further wrongdoings by or at the behest of Helix.' [Citation.] [¶] As Helix observes, this declaration raises questions about the intent and reasonableness of the Anti-SLAPP Motion. Two explanations are possible for the earlier failure to include this declaration: either (1) Clark and Freya Holdings filed a motion premised on a single factually distinguishable case with no other evidence than the January 28, 2021 [e]mail because they were confident in the merits of their position, or (2) Clark and Freya Holdings did not want to spend the time and money to bolster a motion that was already being brought on questionable grounds. The former strains credulity and requires finding some degree of ineptitude in counsel, therefore the latter is more likely. But regardless of the reasons for Clark and Freya Holding[s'] tactics, the Court concludes that the Anti-SLAPP Motion was, in fact, frivolous."

Because the trial court expressly found the motion was frivolous, and imposed sanctions based on that finding, we must "interpret the imposition of sanctions as an implied finding that the action was also brought in bad faith." (*Summers, supra*, 225 Cal.App.3d at p. 1071, fn. 19; see also *Jespersen, supra,* 114 Cal.App.4th at p. 633 [a trial court may infer subjective bad faith from the pursuit of a frivolous tactic].)

Winkler asserts evidence in the record "affirms that [he] acted in good faith as he took every reasonable step to confirm his analysis of the FAC that an anti-SLAPP motion was justified for the causes of action that relied on the January 28, 2021 e-mail" including having "an attorney with over 20 years' experience in

10

anti-SLAPP law to review [it], before the filing of the [a]nti-SLAPP [m]otion." Presenting facts """"which merely afford an opportunity for a different opinion"""" however, is insufficient to find an abuse of discretion. (*Shelton v. Rancho Mortgage & Investment Corp.* (2002) 94 Cal.App.4th 1337, 1345.) Winkler has not demonstrated the trial court "'exceed[ed] the bounds of reason'" (*Alfaro, supra*, 82 Cal.App.5th at p. 37) in impliedly finding the motion was brought in bad faith.[3]

We likewise reject Winkler's argument that the trial court did not adequately describe the conduct warranting sanctions. (See § 128.5, subd. (c) ["An order imposing expenses shall be in writing and shall recite in detail the action or tactic or circumstances justifying the order"].) The trial court issued a detailed ruling after a hearing on the attorneys' fee motion, excerpts of which are quoted above. According to Winkler, however, the order is insufficient because it does not specifically reference him when analyzing the conduct warranting sanctions. We are unpersuaded.

As discussed above, the trial court's order noted the motion cited primarily to one case, which was distinguishable on the facts. The trial court further observed that Clark and Freya did not file a declaration in support of their anti-SLAPP motion perhaps because they "did not want to spend the time and money to bolster a motion that was already being brought on

---

3      Relying on statements made by the court at oral argument, Winkler contends the trial court was "confus[ed]" about whether a plaintiff seeking attorneys' fees under section 425.16, subdivision (c)(1) must show the motion was frivolous *and* brought in bad faith. "[A] judge's comments in oral argument[, however,] may never be used to impeach the final order." (*Jespersen, supra*, 114 Cal.App.4th at p. 633.)

questionable grounds." Because Winkler represented Clark and Freya in the proceedings below, he is ultimately responsible for the motion's lack of legal and evidentiary support. We therefore conclude the trial court's written order recites with "'reasonable specificity'" (*Foundation for Taxpayer & Consumer Rights v. Garamendi* (2005) 132 Cal.App.4th 1375, 1389) the conduct or circumstances leading to the award of attorneys' fees.

Winkler next argues the trial court erred by finding the motion was frivolous. We agree with Winkler that a moving party is not *required* to submit evidence to show the claims arose from protected activity. As we explained in *Helix I*, however, in this case, the lack of evidence demonstrating either that Clark intended to sue Helix at the time she sent the January 28 email, or that Helix was contemplating legal proceedings at the time Clark sent the email, was fatal to her motion. (*Helix I, supra*, B315990 [nonpub. opn.].) We cannot, therefore, say the court abused its discretion in finding the anti-SLAPP motion was frivolous given the complete lack of evidence.[4]

Winkler also claims that Helix did not meet its burden to show "'any reasonable attorney would agree the motion was totally devoid of merit'" (*L.A. Taxi Cooperative, supra,* 239 Cal.App.4th at p. 932) as is required to show frivolousness under section 425.16, subdivision (c)(1). Winkler relies on a declaration submitted in support of his opposition to the motion for attorneys'

---

4    Winkler also argues "the court appeared to rely on arguments by [Helix] which were not in evidence – namely, that Defendant Clark and her counsel both knew that they would be submitting a false declaration." But the trial court's order concludes that "regardless of the reasons for Clark and [Freya's] tactics, . . . the [a]nti-SLAPP [m]otion was, in fact, frivolous."

12

fees, in which an attorney who reviewed the anti-SLAPP motion before Winkler filed it, declared: "I felt – and still feel – strongly that the email discussing litigation and used as evidence in this matter satisfied the first prong of the [anti-SLAPP statute], placing this case under the umbrella of the litigation privilege." While helpful to Winkler's position, this declaration (as well as Winkler's appellate counsel's declaration stating the same) does not mandate a finding that reasonable attorneys would believe the anti-SLAPP motion had merit. We acknowledge a different opinion of frivolousness is possible, but we are constrained by the deferential abuse of discretion standard. We are ""neither authorized nor warranted in substituting [our] judgment for the judgment of the trial judge"" under this standard of review, when the trial court's judgment was inside the bounds of reason. (*580 Folsom Associates v. Prometheus Development Co.* (1990) 223 Cal.App.3d 1, 20, italics omitted.)

Winkler lastly argues that even if we disagree that the trial court should have denied the motion in its entirety, the trial court erred by awarding Helix its attorneys' fees incurred in responding to the appeal in *Helix I*. In making this argument, Winkler confuses section 907, which authorizes a Court of Appeal to award sanctions for a frivolous appeal,[5] with section 425.16, subdivision (c)(1), which mandates sanctions for filing a frivolous anti-SLAPP motion in the trial court. "A statute authorizing an attorney fee award at the trial court level [such as section 425.16, subdivision (c)(1)] includes appellate attorney fees unless the

---

5    Section 907 provides: "When it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just."

13

statute specifically provides otherwise." (*Evans v. Unkow* (1995) 38 Cal.App.4th 1490, 1499.) Section 425.16, subdivision (c)(1) does not preclude fees in responding to an appeal of an order denying an anti-SLAPP motion. Thus, those fees are recoverable, and the trial court did not abuse its discretion by awarding them.[6]

---

6    In *De La Carriere v. Green* (2019) 39 Cal.App.5th 270, 278 the sole case relied on by Winkler, the Court of Appeal held section 128.5 does not permit a trial court to impose sanctions against a party for pursuing a frivolous appeal. That is not what occurred here, however. Rather, the trial court awarded Helix attorneys' fees under section 425.16, subdivision (c)(1), which has been interpreted to include fees incurred in opposing the frivolous motion *and* in responding to an appeal of an order denying the motion. (See *Carpenter v. Jack in the Box Corp.* (2007) 151 Cal.App.4th 454, 461 ["The trial court's authority to award fees and costs under section 425.16, subdivision (c) includes authority to award fees incurred in responding to an appeal of an order granting or denying a special motion to strike . . . "].)

## DISPOSITION

The order is affirmed. Helix is awarded its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

CURREY, P. J.

We concur:

COLLINS, J.

ZUKIN, J.